BOSE CORPORATION *vs.* CONSUMERS UNION OF UNITED STATES, INC.

Suffolk.    March 7, 1975. — April 16, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Limitations, Statute of.    Practice, Civil,* Claim in set-off, Recoupment.    *Equity Pleading and Practice,* Counterclaim.

A defendant's legal claim for libel not arising out of the same transaction as the plaintiff's action at law could not be asserted either as a recoupment or a set-off and (prior to the effective date of G. L. c. 260, § 36) had to be asserted as an independent action commenced within the period specified in G. L. c. 260, § 4.    [427-429, 431]

A defendant's legal claim for libel not arising out of the same transaction as the plaintiff's equitable claim could not be asserted as a counterclaim under Rule 32 of the Superior Court and (prior to the effective date of G. L. c. 260, § 36) had to be asserted as an independent action commenced within the period specified in G. L. c. 260, § 4.    [429-430, 431]

Question of law certified to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Charles Hieken* for the plaintiff.

*Michael N. Pollet* of New York (*Gerald A. Berlin* & *Dwight E. Golann* with him) for the defendant.

KAPLAN, J. Utilizing S.J.C. Rule 3:21, 359 Mass. 790 (1971), the United States District Court, District of Massachusetts, has certified to us a question of State law pertinent to a case pending there. The question concerns the application of our statute of limitations to counterclaims considered "permissive" under Rule 13 (b) of the Federal Rules of Civil Procedure, 28 U. S. C. Appendix (1970).

Bose Corporation (Bose), manufacturer of the Bose "901" loudspeaker system, commenced an action against Consumers Union of United States, Inc. (C. U.), in the United States District Court, District of Massachusetts, jurisdiction being claimed principally if not altogether on the basis of alleged violations of § 43 (a) of the Lanham Act, 15 U. S. C. § 1125 (a) (1970). The gravamen was that C. U., a nonprofit organization purporting to test and report to the public impartially on the quality of sundry commercial products, had in the May, 1970, issue of its magazine, Consumer Reports, maliciously published false, derogatory, and disparaging information and opinions about the "901," the information and opinions being the result of negligent and biased testing and appraisal of the product. In addition to money damages, the complaint prayed relief in the form, among other things, of the publication by C. U. in its magazine of various corrective or curative statements.

The date of the institution of the action by Bose was February 23, 1971. Against the complaint, which was voluminous, C. U. launched a series of motions that need not be detailed here. As the action wound its way, the complaint was three times amended, the last amendment being filed on October 15, 1973. C. U. ultimately filed its answer on March 1, 1974, more than three years after the commencement of the action. The answer, among other averments, set up two counterclaims for money damages grounded jurisdictionally on diversity of citizenship. These charged that by reason of the filing of the original complaint, the issuance of a contemporaneous

press release, and the granting of an interview in March, 1971, Bose had libelled C. U.; it is also possible to read the counterclaims as charging malicious abuse of process on the part of Bose.[1] Bose moved to dismiss the counterclaims as barred by G. L. c. 260, §§ 2A and 4, prescribing (prior to certain recent amendments not here applicable) a two-year limitations period for those torts.[2] After argument on the motion, the judge issued his certification order on October 22, 1974, under S.J.C. Rule 3:21, 359 Mass. 790 (1971), recounting the foregoing history of the action in substance. He ruled — and we perforce accept his characterization in rendering our opinion — that the counterclaims were "permissive" under Federal Rule 13 (b), that is, to quote the rule, "not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim"; hence the pleader had the option to assert them as counterclaims or to make them the basis of a separate action.[3] The question of State law certified is: "Does the filing of a complaint suspend the running, of the statute of limitations against permissive counterclaims which are pleaded in the answer under F. R. Civ. P. 13 (b), and which accrued at the time of the filing of the complaint

---

[1] The counterclaims are also susceptible of the interpretation that they charge malicious prosecution of a civil action, but such a charge, according to the District Court, could not accrue until the main action was concluded, so the limitations question does not arise on this phase.

[2] The period for libel under G. L. c. 260, § 4, became two years by St. 1968, c. 94, § 1; it has since been enlarged to three years as to causes of action arising after January 1, 1974. See St. 1973, c. 777, §§ 3 and 4. The period for undifferentiated torts (including malicious abuse of process) was two years under G. L. c. 260, § 2A, until St. 1973, c. 777, §§ 1 and 4, extended the period to three years as to causes of action arising after January 1, 1974.

[3] In deciding that the counterclaims were "permissive," the District Court relied in part on *Williams* v. *Robinson,* 1 F. R. D. 211 (D. D. C. 1940).

or thereafter, but before the answer was filed?" The whole question can be fairly restated as whether a pleaded counterclaim, unrelated in subject matter to the complaint, speaks for statute of limitations purposes as of the date of the commencement of the action,[4] or rather speaks as of the date of the filing of the pleading in which the counterclaim is alleged.

This is a not unfamiliar problem to which American jurisdictions give differing answers, largely dependent on their statutory schemes for the assertion of claims by a defendant in an action, as these schemes can be related to statutes of limitations that are often not directly or unambiguously addressed to such claims. See James, Civil Procedure, § 10.17, p. 486 ff. (1965); anno. 127 A. L. R. 909 (1940); cf. anno. 1 A. L. R. 2d 630 (1948). For Massachusetts the watershed date regarding this problem is July 1, 1974, when our new Rules of Civil Procedure and accompanying legislation went into effect accomplishing vital modernizations of our civil procedure.

Before these reforms, Massachusetts in actions "at law" knew of "recoupments" and "set-offs," but not counterclaims. (See, as to the nomenclature, *Fall River Line Pier, Inc.* v. *New York, N. H.* & *H. R.R.* 344 Mass. 179, 180, fn. 1 [1962].[5]) Neither recoupment nor set-off was "compulsory." Recoupment was a common law concept, a defendant's claim arising out of the transaction that formed the basis of the plaintiff's claim; it was generally if not always timely, no matter when actually pleaded in the action, if the plaintiff's claim was timely; it served, if the defendant succeeded on it, to reduce or extinguish the

---

[4] Or as of the date of the accrual of the counterclaim when that claim accrues after commencement of the action.

[5] The pre-July, 1974, scheme is sketched in the Reporters' Notes to Mass. R. Civ. P. 13, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 242 (1974).

plaintiff's claim, but it could not result in an affirmative recovery for the defendant.[6]   "Set-off" was defined and regulated by statute, G. L. (Ter. Ed.) c. 232, §§ 1-11. The substance appeared in § 1: "If at the commencement of an action upon a judgment or upon a contract, express or implied, for property sold, for money paid, for money had and received, for services performed and for an amount which is liquidated or may be ascertained by calculation, the defendant has in his own right a claim against the plaintiff such as is hereinbefore mentioned . . . it may be set off against the plaintiff's claim as hereinafter provided."   Set-off was thus available only in specifically defined situations.   It did not, however, have to spring from the transaction grounding the plaintiff's claim, and there could be affirmative recovery on it in excess of any recovery by the plaintiff.   See *Colt* v. *Cone,* 107 Mass. 285, 289 (1871).   For statute of limitations purposes, a set-off was deemed asserted at the institution of the action regardless of when the so called declaration in set-off in which it was alleged was in fact entered in the action.   This proposition was stated, albeit awkwardly, in G. L. c. 232, § 10: "The provisions of law relative to the limitation of actions shall apply to declarations in set-off, and the time limited shall be computed from the commencement of the action by the plaintiff."   (Section 10 was evidently a corruption, without intended change of meaning, of a predecessor codification which put the matter more plainly: "If a law for the limitation of actions is alleged by way of defence to the defendant's demand [in set-off], the limitation shall be applied in the same manner as it would have been to an action brought on the same demand if it had been commenced at the time when the plaintiff's action

---

[6] For an oddity in the law of res judicata resulting from this limit on recovery, see *Derderian* v. *Union Mkt. Natl. Bank,* 326 Mass. 538 (1950), and Restatement: Judgments, § 57 (1942).

was commenced."[7]  See *Lovell* v. *Nelson,* 11 Allen 101, 102-103 (1865); *Colt* v. *Cone, supra,* at 288-289 (1871); *Tyler* v. *Boyce,* 135 Mass. 558, 561 (1883).  It will be observed, then, that if the Bose complaint in the present action can be taken to be one which, pre-July, 1974, would be denominated one "at law," the C. U. counterclaims under Massachusetts law could figure neither as recoupments nor set-offs and would have to be asserted as independent actions to which the ordinary limitations periods of G. L. c. 260, §§ 2A and 4, would apply in the usual way.

In suits "in equity," Rule 32 of the Superior Court (1954) (corresponding to S.J.C. Rule 2:13, 351 Mass. 753 [1967]) did recognize "counterclaims."  Any "arising out of the transaction which is the subject matter of the suit" and "might be the subject of an independent suit in equity" had to be asserted in the answer on pain otherwise of being lost to the defendant.  A counterclaim of this kind was thus "compulsory."  Permissively, the answer could allege a counterclaim "of a legal nature . . . arising out of such transaction," or a counterclaim "not arising out of such transaction, which might be the subject of an independent suit in equity."[8]  See, for

---

[7] The quotation is from Pub. Sts. (1882) c. 168, § 18.  The corruption, probably resulting from an attempt at abbreviation of language, occurred in the 1902 codification, R. L. (1902) c. 174, § 10, carried forward into G. L. c. 232, § 10.

[8] The full text of Rule 32 (with certain complications as to parties, as will be seen) was:  "COUNTERCLAIM.  The answer, without cross bill, must set up any counterclaim, against any one or more of the parties, arising out of the transaction which is the subject matter of the suit, which might be the subject of an independent suit in equity.  The answer may set up (a) any counterclaim of a legal nature, against any one or more of the parties, arising out of such transaction, or (b) any counterclaim against the plaintiff alone, not arising out of such transaction, which might be the subject of an independent suit in equity.

"Such counterclaim shall have the same effect as a cross bill, so as to enable the court to enter a final decree in the same suit on both the original and cross claims.  No cross bill shall be filed.

application of Rule 32 of the Superior Court (1954), *Volpe Constr. Co. Inc.* v. *Trustees of Tufts College,* 1 Mass. App. Ct. 38 (1973). And so, if because of the special relief claimed, the Bose complaint could be viewed as an old-style suit in equity, C. U.'s counterclaims, being "legal" not "equitable" and assumed to be unrelated to the main suit, would not fit as counterclaims in the former Massachusetts practice and would have to be asserted by way of independent action with the limitations period applying to the action in the usual way.

This whole law and equity structure was swept away on July 1, 1974.[9] We now have counterclaims, compulsory and permissive, analogous to those of Federal Rules 13 (a) and (b), absorbing the old recoupments, set-offs, and counterclaims, and going beyond them.[10] And with respect to the question of the statute of limitations, G. L. c. 260, § 36, inserted by St. 1973, c. 1114, § 341, and taking effect on July 1, 1974 (see § 351), provides expressly with respect to permissive counterclaims like those at bar that "[t]he time of such limitation shall

---

"A counterclaim shall be stated in short and simple form and described clearly as by way of counterclaim."

"When in the determination of a counterclaim complete relief cannot be granted without the presence of parties other than those to the bill, the court shall order them to be brought in as defendants if they are subject to its jurisdiction.

"The court in its discretion may strike out any counterclaim if it apears that the matter cannot conveniently be determined in the suit."

For the Note to Rule 32 as first adopted explaining its derivation from the Federal Equity Rules and mentioning other details, see 16 Mass. L. Q. (No. 5) at pp. 108-112 (1931).

[9] General Laws c. 232, §§ 1-11, are retained to apply only to actions in our District Courts.

[10] Mass. R. Civ. P. 13, 365 Mass. 758 (1974). This differs in certain details from the Federal rule. See, on the whole matter, Smith and Zobel, Rules Practice, 360-384 (1974).

be computed as if an action had been commenced therefor at the time the plaintiff's action was commenced." [11]

Returning to the question certified to us: If it is read as a current inquiry, say as applied to an action commenced in a court of the Commonwealth after July 1, 1974, then the answer would be that the commencement of the original action would "suspend" the running of the statute of limitations with respect to the counterclaims.

We suppose, however, that the question put seeks an opinion about an action like the present commenced in a court of the Commonwealth on February 23, 1971, with the defendant having a putative claim of libel or the like accruing at or near the same date, and assumed not to arise out of the same transaction. Such a claim, as we have seen, could not have been asserted as a recoupment, set-off, or counterclaim in the sense of the then existing Massachusetts law, would have had to be made the subject of an independent action, and would have been barred if not thus sued on within two years. [12]     The

---

[11] General Laws c. 260, § 36, reads in its entirety as follows: "The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiff's action was commenced.

"Notwithstanding the provisions of the first paragraph of this section, a counterclaim arising out of the same transaction or occurrence that is the subject matter of the plaintiff's claim, to the extent of the plaintiff's claim, may be asserted without regard to the provisions of law relative to limitations of actions.

"This section shall apply to actions brought by the commonwealth or for its benefit."

See Smith and Zobel, op. cit., § 13.31.

[12] Still assuming a characterization of C. U.'s claims as "permissive," C. U. could, if it chose, have asserted them against Bose at an earlier date well within the measuring period of two years, either as counterclaims in the Bose action in the Federal court, or by way of an independent action against Bose in any court of competent jurisdiction. As to the former possibility: It appears that C. U. moved on August 4, 1972, in advance of filing an answer, to dismiss the

precise pertinence of the Massachusetts law to an action pending in the United States District Court is for that court, not for us. But if that law is carried over to the Federal action, the statute of limitations would be held to be not suspended, and the counterclaims would therefore be subject to dismissal. It would make no difference, even if it were the fact, as C. U. contends, that Bose was early put on informal notice that C. U. intended to make claims for libel and so forth.

The question certified is answered as indicated above and the Reporter of Decisions and the clerk of this court are to follow the procedures for furnishing copies of this opinion and transmitting them set out in *Hein-Werner Corp.* v. *Jackson Indus. Inc.* 364 Mass. 523, 530-531 (1974).

*So ordered.*

---

amended complaint for failure to state a claim. The defense of failure to state a claim, instead of being asserted by motion in advance of answer, could have been set up in an answer by C. U. in which it could also have alleged its counterclaims. See Federal Rules of Civil Procedure, Rule 12 (b), cf. Rule 12 (d), 28 U. S. C. Appendix (1970).