O’Toole, J.
This matter is before the court on the motion for summary judgment[3] of defendants-in-counterclaim A. Harold Howell, Jonathan M. Keyes, and Fred N. Pratt, as general partners of Milk Street Residential Associates, as general partner of Franklin Building Associates, Limited Partnership, and The Boston Financial Group Incorporated, formerly known as Boston Financial Technology Group Inc. (hereinafter collectively referred to as “Boston Financial”). This case arises from an investment by defendants/plaintiffs-in-counterclaim Carl Bimberg and Henry S. Kris-tal (the Limiteds) in a Chicago real estate project known as the Onterie Center. Boston Financial brought this action seeking a declaratory judgment that they had fulfilled any fiduciary duties and contractual obligations they may have had to the Limit-eds, that they made no actionable misrepresentations to the Limiteds with regard to Onterie Center and any investment in it, and that claims asserted against them by the investors (but not yet in litigation when the complaint was filed) would be barred by the statute of limitations. The Limiteds responded by filing a counterclaim alleging claims of breach of fiduciary duly, fraud and negligence by Boston Financial.[4] For the following reasons the present motion for summary judgment is allowed.
BACKGROUND
The Limiteds each invested some $141,000.00 in Franklin Building Associates Limited Partnership (Franklin Building) which in turn invested in another limited partnership, Onterie Associates. Onterie Associates was established to own, operate and manage the Onterie Center, a building located in Chicago containing residential, retail and commercial space. The Boston Financial Group Incorporated is the parent corporation of Franklin Building and prepared the Offering Memorandum (OM) sent out to potential investors, including the Limiteds. The OM, dated January 1, 1984, was 351 pages long and contained information not only describing the project, but also addressing issues such as investment risks, financing, taxes and economic benefits.
Over time, a number of memoranda were sent from Boston Financial to the Limiteds. Specifically, memo-randa were sent on December 9, 1988 and January 9, 1989, informing investors of how the project was going, whether certain projections were being met, and how Boston Financial intended to deal with problems that had arisen.
DISCUSSION
Summary judgment should be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
A. The Applicable Statute of Limitations is Massachusetts General Law Chapter 260, §2A
The Limiteds argue that Minnesota law governs the statute of limitations applicable to the present action and, therefore, they had six years in which to bring their claim.[5]
It is well settled in Massachusetts that the statute of limitations is a procedural issue governed by the law of the forum. Brown v. Great American Indemnity Co., 298 Mass. 101, 104-05 (1937); Clarke v. Pierce, 215 Mass. 552, 553 (1913); See also Hemric v. Reed and Prince Manufacturing Co., 739 F.2d 1, 2 (1st Cir. 1984). The Massachusetts Statute of Limitations therefore applies.
The counterclaim, alleging fraud, negligence and breach of fiduciary duty, sounds in tort and is governed by the three-year statute of limitations. G.L.c. 260, §2A.[6] The Limiteds failed to bring their claim within the applicable three-year period, and their claim is time barred unless the running of the period was tolled by the “Discovery Rule.”
B. The Discovery Rule
For purposes of the statute of limitations, a counterclaim is deemed to have been commenced when the *638 plaintiffs action was commenced. G.L.c. 260, §36. In this case, Boston Financial filed their action on May 7, 1992; the counterclaim is deemed to have been commenced on that date as well. Application of the three-year limitation period means that the counterclaim is timely only if the causes of action set forth arose after May 7, 1989.
The Limiteds, however, argue that, although the offering memorandum was sent out in 1984, because of Boston Financial’s fraudulent concealment it was not until 1990 that the Limiteds knew or should have known of the alleged misrepresentations. Therefore, they say, the statute of limitations did not begin to run until sometime in 1990.
If a defendant has fraudulently concealed a cause of action from the party entitled to bring it, the period of concealment is excluded from the time calculation for purposes of the statute of limitations. G.L.c. 260, §12. Under this so-called “Discovery Rule,” the statute of limitations only begins to run once the plaintiffs know, or reasonably should know, of the existence of the cause of action. Friedman v. Jablonski, 371 Mass. 482, 484-86 (1976); Hendrickson v. Sears, 365 Mass. 83, 88-91 (1974); Lynch v. Signal Finance Co. of Quincy, 367 Mass. 502, 507-08 (1975).
Fraudulent concealment exists where a defendant acts affirmatively to hide facts or, if a fiduciary duty exists between plaintiff and defendant, where the defendant fails to give information he had a duty to reveal. Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987). It is essential that the defendant have concealed from the plaintiff “knowledge of the facts giving rise to a cause of action and the means of acquiring knowledge of such facts.” Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106 (1980). A plaintiff who has “inquiry notice” that a cause of action may exist must use reasonable diligence to uncover the facts underlying the claim. Friedman v. Jablonski, 371 Mass. at 485-87; Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106-08 (1980); Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987).
The record shows that at least as of January 9, 1989, the Limiteds were sufficiently on notice of the possibility of the claims they now seek to assert as to terminate the tolling effect of the “Discovery Rule” and to start the running of the statute of limitations.
In paragraph 50 of their counterclaim, the Limiteds allege that the OM contained the following false and misleading statements: (1) that the projections made were reasonable and appropriate; (2) that the only rental concessions needed to attract commercial tenants would be for those tenants who leased during the first ten months after the project was available for leasing; and (3) that by November 1, 1988, the commercial space would achieve 95% occupancy and until that period, the commercial space would be leased according to a schedule set forth in the OM.
On December 9, 1988, and January 9, 1989, Boston Financial sent the Limiteds memoranda specifically addressing all these issues. First, the December memorandum explicitly stated that, as of its date, the occupancy rates of office and retail space were 60% and 40% respectively, well below the OM’s projection of 95%. In addition, the memorandum disclosed that the project had had to offer generous concessions to attract commercial tenants and that a year or more of free rent on leases was not unusual in the relevant area. In addition, the January 1989 memorandum reiterated the low occupancy rates for the commercial space and noted that significant rent concessions would likely continue to be made in 1989. Clearly, these memoranda contained enough information to put the Limiteds on notice that the OM’s projections were not being fulfilled. At this point, the Limiteds had an obligation to use reasonable diligence to determine whether the OM may have contained some fraudulent statements on these issues. The statute of limitations on the alleged misrepresentations began to run from this time at the latest.
The Limiteds have also alleged that there were misleading omissions from the OM. In particular, in paragraph 52 of the counterclaim they allege that Boston Financial (1) omitted to state that the occupancy rate for Chicago office space had declined every year since 1980, going from 95.3% in 1980 to 87.8% in 1984; (2) omitted to state that unless rental concessions of 12-20 months were made for all office and commercial space, their projected occupancy rates could not be achieved; (3) omitted to state that the vacancy rate for office space in mixed commercial/residential complexes was higher than the rate for space in all-commercial complexes; and (4) omitted to state that there was a significant increase in the amount of new construction of office space being built prior to, simultaneously with, or subsequent to the Onterie Center.
The memoranda sent to the Limiteds sufficiently put them on notice of the possibility of the existence of a cause of action regarding each of these issues. As to the first omission, the chart located on page 263 of the OM clearly shows the decrease in the occupancy rate for Chicago office space from 1980 to 1983. As the OM is dated January 1, 1984, it would have been impossible for Boston Financial to show the decreased occupancy rate for 1984. It is impossible to omit an historical fact which has not yet occurred. With regard to the claimed omission about rental concessions, both memoranda mention the continuing need for substantial concessions and that there were difficulties in reaching projected occupancy rates for commercial space. This information was sufficiently inconsistent with any impression left by the OM as to put the Limiteds on inquiry notice.
Likewise, the claim that Boston Financial omitted to state that the vacancy rate for office space in mixed *639 commercial/residential complexes was higher than the rate in wholly commercial complexes and that this fact was inherently unknowable until September 1990 lacks merit. There is no evidence offered that Boston Financial concealed the fact that vacancy rates for office space in mixed-use buildings was greater than the rate in strictly commercial buildings. See Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106 (1980). The memoranda of December 1988 and January 1989 made it clear that there existed difficulties in renting the office space, placing the Limiteds on inquiry notice “to act in a reasonably diligent manner to uncover the facts underlying [their] claims.” Maggio, 824 F.2d at 130. The difference in rental rates between strictly commercial buildings and mixed-use buildings was one such underlying fact.
The final omission alleged by the Limiteds is that Boston Financial failed to disclose (1) the amount of office space recently built or scheduled to be built in the relevant area and (2) the fact that as a result, occupancy and rental rates were unlikely to grow as quickly as they had in the past. Again, the memo-randa clearly discuss the glut of office space in the Chicago area and its effect on the rental of office space in Onterie Center. The December 1988 memo specifically refers to “an oversupply of commercial space in the area . . . Much but not all [of which] was foreseen when Onterie Center was planned.” The same memo also goes on to state that the “severe effect the nearly 15% increase in supply would have on vacancy rates and . . . effective rent levels” was completely unforeseen.
In sum, as of January 9, 1989, the Limiteds were in possession of the facts, and/or the means of acquiring knowledge of such facts, regarding all the false and misleading statements and omissions alleged in the counterclaim. Any optimistic statements made by Boston Financial in various memoranda were not sufficient to render these facts “inherently unknowable.” There is no dispute that the memoranda of December 9, 1988 and January 9, 1989 were sent and received. The statute of limitations began to run by January 9, 1989, at the latest, more than three years before the commencement of the action.
C. G.L.c. 260, §36
The Limiteds also argue that even if their counterclaim is time barred, it may still be maintained under the provisions of G.L.c. 260, §36. This section states in relevant part:
[A] counterclaim arising out of the same transactions or occurrence that is the subject matter of the plaintiffs claim, to the extent of the plaintiffs claim, may be asserted without regard to the provisions of law relative to limitations of actions.
A counterclaim under §36, which goes only “ ‘to the extent of the plaintiffs claim ’ . . . corresponds to ‘recoupment’ in pre-Rules practice.’ ” Bernstein v. Grammercy Mills, Inc., 16 Mass.App.Ct. 403, 409 (1983). Recoupment served “to reduce or extinguish the plaintiffs claim, but it could not result in an affirmative recovery for the defendant.” Bose Corp. v. Consumers Union of United States, Inc., 367 Mass. 424, 427-28 (1975). The statute clearly contemplates application only where monetary recovery is sought by the plaintiff. As the action currently before the court is for a declaratory judgment, this portion of G.L.c. 260, §36 is inapplicable.
ORDER
(1) For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of defendants-in-counterclaim A. Harold Howell, Jonathan M. Keyes and Fred N. Pratt, as general partners of Milk Street Residential Associates, as general partner of Franklin Building Associates, Limited Partnership, and the Boston Financial Group Incorporated, formerly known as Boston Financial Technology Group, Inc. be ALLOWED.
(2) Further, it is hereby ORDERED that partial summary judgment be entered in favor of the plaintiffs as to so much of their original claim as prays for a declaratory judgment that the statute of limitations bars any claims against plaintiffs by investors in the project, and by entering a declaration to that effect.

 Although brought as a motion to dismiss, because the court has considered materials outside the pleadings, the motion will be treated as one for summary judgment.

 A motion to dismiss the Complaint as an inappropriate use of the declaratory judgment statute was denied by another judge of this Court.

 Minn. Stat. §541.05, subd.l, §6.

 Although a breach of fiduciary duty may be classified as a contract claim, in the case at bar the claim for breach of fiduciary duty is essentially a reallegation of the fraud claim and, therefore, sounds in tort. See generally Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (court looks to “gist of the action” or essential nature of plaintiffs claims in determining which limitation statute applies): Kirley v. Kirley, 25 Mass.App.Ct. 651, 652-54 (1988) (classic corporate “freeze out” deemed to be tort action); See e.g. Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 124 Cir. 1987) (tort statute of limitations applied to state law claims for common law fraud and breach of fiduciary duty).