**HEWLETT–PACKARD, INC., Plaintiff,**

v.

**Helge BERG and Lars Arvid Skoog, Defendants.**

**Civ. A. No. 93–10128–JLT.**

United States District Court, D. Massachusetts.

Nov. 7, 1994.

Douglas W. Salvesen, Todd & Weld, Boston, MA, Kevin P. Light, Choate, Hall & Stewart, Boston, MA, Richard Allan Horning, Horning, Janis & Harvey, San Francisco, CA, for Apollo Computer, Inc.

Richard M. Gilbert, Goldstein & Manello, Boston, MA, David A. Burman, Stockholm, Sweden, for Helge Berg, Lars Arvid Skoog.

### MEMORANDUM

TAURO, Chief Judge.

This case arises out of an international arbitral award rendered in favor of Defendants. Plaintiff contends that the tribunal never reached a final decision on the merits regarding an asserted set-off. Defendants claim that the award is final and complete. In essence, Defendants seek to confirm the award as written, and Plaintiff seeks to authorize a set-off against the award and/or compel the Defendants to attend another arbitration on the remaining issues.

Presently before the court are Defendants' Motion to Dismiss and Motion to Confirm Arbitral Award.

### I.

### Background

In March of 1982, Apollo Computer, Inc. ("Apollo")[1] and Dicoscan Scandinavia AB ("Dicoscan") entered into a distribution agreement (the "1982 Agreement"). Dicoscan, a distributor of computer products, was given an exclusive license to distribute Apollo's computer workstations in Scandinavia for a period of two years. At the end of the two years, the parties executed a second contract (the "1984 Agreement"), for all purposes identical to the first, extending the relationship for three more years. Both Agreements contain clauses subjecting any disputes to arbitration.

Shortly after the signing of the 1984 Agreement, a dispute arose as to the financing of Dicoscan's purchases. Allegedly, Dicoscan was delinquent on payments for eleven shipments made pursuant to the 1982 Agreement, totalling approximately $207,000. Two further shipments were made under the 1984 Agreement, for approximately $10,000. Apollo then terminated the distributorship agreements. It is uncontested that Dicoscan has not paid the invoices from the 1982 or 1984 Agreements.[2]

Soon after the termination, Dicoscan filed for bankruptcy under Swedish law. The bankruptcy receiver liquidated the company, and assigned to Berg and Skoog, the Defendants, any claims Dicoscan may have had against Apollo.[3] Defendants sought to initiate arbitral proceedings in the International Chamber of Commerce Court of Arbitration in Paris ("ICC").[4] Due to the fact that Berg and Skoog claimed under an assignment of Dicoscan's rights, Apollo denied that the dispute was subject to arbitration. Apollo filed suit in this court seeking a permanent stay. This was denied. *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir.1989).

On June 1, 1990, the arbitral tribunal issued its "Terms of Reference".[5] Apollo filed its answer with the ICC in which it denied

---

1. Apollo was subsequently acquired by Hewlett–Packard, Inc., which has been substituted as the party in interest. For simplicity, however, it will be referred to throughout as "Apollo".

2. Although Dicoscan admits non-payment, it contends that it has defenses to the invoices.

3. Berg and Skoog were principals in Dicoscan.

4. This claim alleged breach of contract, breach of implied covenant of good faith and fair dealing, unfair competition, and tortious interference with business relations. The Defendants claimed damages of over 100,000,000 Swedish crowns (Skr).

5. The Terms of Reference are to define the scope of the proceeding. The ICC Rules of Arbitration state: "[b]efore proceeding with the preparation of the case, the arbitrar shall draw up, on the basis of the documents or in the presence of the parties and in light of their most recent submission, a document defining his Terms of Reference." Article 13(a).

the claims against it and asserted a counter-claim based on the unpaid invoices from the 1982 Agreement. The dispute was finally brought to an ICC tribunal (the "Tribunal") sitting in Boston, Massachusetts in March of 1991.[6] During the course of the proceedings Apollo sought to amend its counterclaim to add $10,978, stemming from the two ship-ments pursuant to the 1984 Agreement, and to dismiss the arbitration on the grounds that the assignment of Dicoscan's rights by the Swedish Bankruptcy Court was invalid. Both of these motions were denied.[7] After seven days of hearings the Tribunal found for Defendants. *Berg & Skoog v. Apollo Computer, Inc.*, Int'l Comm. Arb. No. 6259/BGD (January 24, 1992) (the "Award").

 The Tribunal calculated damages in the amount of Skr 4,557,068, which it then converted to U.S. dollars. Surprisingly, it allowed Apollo a set-off in the amount of $10,978—after it denied the motion to put this claim before the court.[8] More impor-tantly, it disclaimed, *sua sponte*, jurisdiction over the 1982 Agreement set-off.[9] Four months after the award was handed down, Plaintiff tendered a check for $592,433.17. This represented the amount owed, less $207,111.59 from the 1982 Agreements which Apollo withheld unilaterally.

6. It is undisputed that Massachusetts law con-trols the proceedings.

7. The Tribunal interpreted the ICC Rules as not allowing the amendments without consent from both parties. Award, p. 5.

8. Other questionable decisions with regard to the award are noted. The Tribunal mistakenly and unnecessarily converted the award to U.S. dol-lars, using the exchange rate in effect at the time of the breach, instead of that in effect at the time of the award. *See Gutor International AG v. Raymond Packer Co.*, 493 F.2d 938, 943 (1st Cir.1974). This lowered Defendants' recovery by approximately $200,000. Also, contrary to Mas-sachusetts law, the Tribunal awarded interest from the time of the filing of the complaint as opposed to the time of the breach. M.G.L. c. 231 § 6C; *see also Acushnet Federal Credit Union v. Roderick*, 26 Mass.App.Ct. 604, 608, 530 N.E.2d 1243, 1247 (1988). This error cost the Defen-dants four years of accrued interest, or $267,409.

9. See discussion *infra*.

10. Defendants' Memorandum of Reason in Sup-port of Motion to Confirm Arbitration Award

At the time it tendered the deficient amount, Apollo initiated another arbitration to resolve any remaining issues—namely the 1982 Agreement counterclaim. Now that the shoe is on the other foot, the Defendants deny the jurisdiction of the second arbitra-tion. Presently, that arbitration has been stayed at the request of Apollo, who does not want to proceed without the presence of De-fendants. This court notes that the ICC has made a preliminary determination that they have jurisdiction over the second arbitration.

## II.

### Analysis

A. Confirmation of the Arbitral Award.

 The Award is subject to the Con-vention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §§ 201–08. This court has the power to confirm the Award. 9 U.S.C. §§ 203, 207. The Code allows for any party subject to an arbitration to apply for an order confirming the award within three years.[10] 9 U.S.C. § 207.[11]

 The Convention strictly limits the scope of review applicable to ICC awards. Convention Art. V. The procedures allowed by the implementing legislation are meant to

mistakenly applies the Federal Arbitration Act's one year time limit for confirming an award and argues for leniency. Plaintiff admirably points out that the Award is instead subject to the Convention's three year period. Defendants' Motion is, therefore, timely.

11. The court notes, however, that Defendants failed to follow the proper confirmation proce-dures. Article IV of the Convention reads:

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:
(a) the duly authenticated original award or a duly certified copy therefore
(b) the original agreement ... or a duly cer-tified copy thereof. ...

The Defendants have not submitted the origi-nal or a certified copy of either of the two neces-sary documents, although uncertified copies have been submitted. The court will overlook this deficiency, however, due the confused nature of the proceedings and the fact that neither party is contesting their validity.

be summary in nature. *Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 335 (5th Cir.1976). The decisions of the panel cannot be reviewed for errors in law or fact. *Mobile Oil v. Oil, Chemical and Atomic Workers Int'l Union*, 600 F.2d 322, 326 (1st Cir.1979). Even egregious mistakes are not reversible unless they fall into one of the narrow categories supplied in the Convention. Moreover, the implementing legislation mandates that "the court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

Article V of the Convention sets forth the only grounds under which a court may refuse to confirm an award:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) the parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) the award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) the subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) the recognition or enforcement of the award would be contrary to the public policy of that country.

■■■ Clearly, none of the procedural exceptions in Art. V(1) apply. It should also be noted that nothing in Article V or elsewhere in the Convention grants a reviewing court the power to alter or modify the award.[12] Defendants have implied that subsection 2(b) is applicable. They claim that the assessment of interest from the time of the filing of the complaint, as opposed to the time of the breach, is contrary to Massachusetts law and public policy. Defendants do not cite any cases supporting the proposition that a court may alter an arbitral award for mistakes of law. Neither do they point to a case which holds that such mistakes rise to a sufficient level to be considered an affront to public policy.

■■■ The Convention has consistently been interpreted with a "pro-enforcement" bias. *See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969 (2d Cir.1974). When an American district court reviews the decision of an international arbitral panel, it is bound by principles of comity. *See Hilton*

**12.** Article V(1)(c) does allow for severance of parts of the award that exceed the scope of the arbitration. This section is inapplicable here.

*v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). As the Second Circuit noted in *Parsons,* the "Convention's public policy defense should be construed narrowly. Enforcement of foreign arbitral awards may be denied on [the basis of Article V(2)(b) ] only where enforcement would violate the forum state's most basic notions of morality and justice." *Id.* at 974. Due to the fact that the above errors in law noted by the parties would not justify setting aside a domestic award, *Trustees of Boston & M. Corp. v. Mass. B.T.A.,* 363 Mass. 386, 294 N.E.2d 340, 343 (1973), clearly they cannot form the basis for setting aside an international award.[13] The Award, therefore, is confirmed as written.

### B. Defendants' Motion to Dismiss

1. Apollo's Declaratory Judgment Action and Claim for a Set-off of $207,112.

■ Defendants moved to dismiss Apollo's complaint, asserting that the Convention does not permit a district court to alter or modify an arbitral award or to sanction an unauthorized set-off from the judgment. Apollo seeks a declaration by this court that it has fulfilled its obligations under the judgment. In effect, they ask this court to approve its unilateral and unauthorized "set-off in recoupment" of $207,112 from the Award handed down by the Tribunal. This sum represents the amount claimed to be due on deliveries made under the 1982 Agreement.

Defendants contend that such an action is not provided for under the Convention. They argue that the Convention specifically and purposefully limits defenses available in a confirmation proceeding and that nothing in the Convention authorizes a separate attack on the validity of an award.

■ In so far as this case is proceeding in the posture of a confirmation under Article IV of the Convention, Apollo's request for a set-off must fail. As noted above, confirmation proceedings are expected to be brief and summary in nature. *Imperial Ethiopian Gov't v. Baruch–Foster Corp.,* 535 F.2d 334, 335 (5th Cir.1976). The Conven-

tion only allows for specific and limited attacks on the validity of the claim, and nowhere does the Convention provide that a court sitting over a confirmation proceeding may adjudicate a counterclaim. As noted in *Fertilizer Corp. of India v. IDI Management, Inc.,* 517 F.Supp. 948 (S.D.Ohio 1981), cited by Apollo for other purposes, "a confirmation proceeding is not an original action; it is, rather, in the nature of a post-judgment enforcement proceeding. In such a proceeding a counterclaim is clearly inappropriate." *Id.* at 963.

Apollo has cited only one case to supports its position, *Jugometal v. Samincorp,* 78 F.R.D. 504 (S.D.N.Y.1978). In *Jugometal,* the Southern District of New York allowed the defendant in a confirmation proceeding to set-off from an arbitral award amounts due from the plaintiff pursuant to three unrelated final arbitral decrees. At the outset, it should be noted that the case at bar is distinguishable from that in *Jugometal.* In *Jugometal,* the amounts claimed to be set-off were uncontested final awards from an arbitral panel. Here, the counterclaims asserted are contested issues of contract law which would require discovery and a full trial.

The reasoning in *Jugometal* was criticized by the Eleventh Circuit in *Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 933 (11th Cir.1990). *Booth,* decided under the Federal Arbitration Act, reaffirmed the prevailing wisdom that "the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., the avoidance of litigation, would be frustrated." *Id.* at 932 (citing *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960)). This concern of avoiding further litigation in the confirmation proceeding was also implicitly present in *Fertilizer Corp. of India.* 517 F.Supp. at 963. If the counterclaim were to be allowed, Defendants would have to be given the opportunity

---

**13.** A favorite example of setting aside a foreign award under similar principles is a case in a which an English defendant was "noticed" by

the nailing of a complaint to the door of the courthouse on the island of Tobago. *Buchanan v. Rucher,* 103 Eng.Rep. 546 (K.B. 1808).

to present their defenses. This court believes that the reasoning behind *Booth* is more applicable to the case before it. It finds, therefore, that Apollo may not raise its counterclaim as a defense to the confirmation.

■ Apollo also puts forth an argument that it is entitled to a common law right of a "set-off in recoupment". This theory is unavailing, and more importantly, no longer in existence. The Supreme Judicial Court opinion in *Bose Corp. v. Consumers Union of United States, Inc.*, 367 Mass. 424, 326 N.E.2d 8 (1975), adequately discusses the demise of two theories of set-off and recoupment.[14]

■ *Bose* concerned the effect of Massachusetts Statutes of Limitations on counterclaims brought under the then newly enacted Federal Rules of Civil Procedure. The court clearly proclaims that "[t]his whole law and equity structure was swept away on July 1, 1974 [the date Massachusetts enacted their new Rules of Civil Procedure]. We now have counterclaims, compulsory and permissive, ..., absorbing the old recoupments, set-offs, and counterclaims, and going beyond them." *Id.* at 430, 326 N.E.2d 8. Under Massachusetts law, set-off and recoupment are no more.

■ The court continues, pointing out that the theories of set-off and recoupment, as described in the *Bose* opinion, would not have aided Apollo. These two actions did not allow a party to unilaterally withhold payment of a judgment by asserting the existence of a dispute which has yet to be ruled upon. Instead, recoupment and set-off were analogous to the modern day counterclaims, and had to be timely pled, argued and won at the trial level. For instance, the Massachusetts Court's discussion of the timeliness of a recoupment claim states that "it was generally, if not always timely, no matter when *actually pleaded in the action ...*" *Id.* at 427, 326 N.E.2d 8 (emphasis added). So too, the set-off could be pled in an action at law and the statute of limitations would be ap-

plied "in the same manner as it would have been to an action brought on the same demand if it had been commenced at the time when the plaintiff's action was commenced." *Id.* at 428, 326 N.E.2d 8 (implying that the set-off must have been pled during the pendancy of the action). As noted above, the district court is not empowered to hear counterclaims in order to alter awards under the Convention.

■ As a final note on this matter, the court points out that a declaratory judgment is not a permissible procedure to review an arbitral decision. Apollo lists a string of cases to support the proposition that "courts have routinely entertained declaratory relief actions where the issues involved enforcement of a contract to arbitrate or the meaning and effect of an arbitration award." Pltf. Mem. at 20. Unfortunately, none of the cited cases support their contention that a declaratory action can be used to alter the award of an arbitral tribunal.

Long ago the First Circuit held that a plaintiff cannot "by a suit for a declaratory judgment reopen the questions which it referred to a neutral for a binding decision and which the neutral decided against the plaintiff." *Mutual Benefit Health & Acc. Ass'n v. United Casualty Co.*, 142 F.2d 390, 393 (1st Cir.1944). This rational is still sound today. In the instant case Apollo requests that this court, through the means of a declaratory judgment, relieve them of the obligation to pay the Award issued by the Tribunal. The court may not do this.

2. The Tribunal's Denial of Jurisdiction Over the 1982 Agreement

■ Between the years of 1982 and 1984 Apollo shipped, in good faith, over $200,000 of goods to Dicoscan. After almost a decade of litigation, these claims still remain unpaid. The essential purpose behind Apollo's filing of this action is to receive, in one form or another, vindication of their claims arising under the shipments.

Both parties spend a great portion of their submissions interpreting the Tribunal's treat-

---

**14.** Defendants are quick to highlight that Apollo technically has been asking for a "set-off in recoupment". Apparently, Apollo believes that the two theories together will survive where separately they have been lost to the ages.

ment of the 1982 Agreement counterclaim. It is uncontested that the Tribunal did not allow Apollo a reduction of damages due to these allegedly outstanding debts. The issue is whether the decision went to the merits of the claim or whether they were dismissed on jurisdictional grounds. If the decision was jurisdictional, the claims are still alive and may be the subject of a second arbitration. If the decision was on the merits, the claims are gone.

We note at the outset that Apollo properly asserted the issue of the 1982 Agreement in its answer to the original arbitration demand. Defendants admit as much in their Memorandum. Apollo also contends, and Defendants do not dispute, that neither party questioned the Tribunal's jurisdiction over the 1982 Agreement during the proceeding.

Apollo correctly points out that the Terms of References set forth four jurisdictional "issues to be determined" by the Tribunal, none of which concerned its power to adjudicate the 1982 Agreement. These questions are:

D. Definition of Issues to Be Determined

----

*JURISDICTION OF THE TRIBUNAL*

2. Whether a valid arbitration agreement exists between Claimants and Apollo based on the 1984 Agreement between Apollo and Dico[scan].

3. Whether the Tribunal has jurisdiction to enter an award in favour of Berg and Skoog as assignees of claims held by Dico[scan] against Apollo.

4. Whether the purported termination of the 1984 Agreement by Apollo was valid effective.

5. Whether the right to arbitration survived the termination of the 1984 Agreement. Terms of Reference, p. 14.

■ As the court interprets it, this section does not *define* the Tribunal's jurisdiction as set down by the ICC.[15] It merely sets out disputed issues of jurisdiction, raised by the parties, that the Tribunal must determine. Solely because the Tribunal was not

asked to affirmatively determine whether it had jurisdiction over the 1982 Agreement, it does not follow that the jurisdiction did not exist. In fact, reading the Terms of Reference as a whole, it is clear that that it did.

Continuing on, the Terms of Reference unambiguously and in two instances, directed the Tribunal to determine the merits of the counterclaims:

D. Definition of Issues to be Determined

-----

*As To The Counterclaims*

20. Whether Dico[scan] is legally obligated to Apollo for the *$206,855* for products ordered, received and accepted.

*The Award*

21. . . . In preparing its award, the Tribunal need not answer every question mentioned in these Terms of Reference; *the Tribunal, however, shall address each of the claims and counterclaims* made by the parties. Terms of Reference, p. 16 (emphasis added).

The Tribunal ignored its clear mandate to determine the question of Apollo's counterclaim and failed to reach the issue. Its reasoning follows:

## II. THE COUNTERCLAIM

1. *The Tribunal Does Not Have Jurisdiction to Rule Upon Defendant's Counterclaim for Approximately U.S. $207,112 Because that Debt Is Not a Debt Arising Under the 1984 Agreement.* Defendant's counterclaim in the amount of U.S. $178,-891.59 for FNBB Drafts . . . guaranteed by Defendant, for equipment shipped to Dico[scan] in May, October, November and December, 1983, is not a debt arising under the 1984 Agreement over which the Arbitral Tribunal has jurisdiction. For the same reason, the Tribunal has no jurisdiction to hear defendant's counterclaim in the amount of U.S. $28,220 for Drafts . . . not guaranteed by Apollo and not purchased by FNBB for equipment shipped to Dico[scan] in January, 1984. Because the

---

**15.** The ICC made a preliminary finding of jurisdiction before the filing of the first suit in this court in January of 1989. The parties have not submitted any specifics of this decision nor have they indicated the presence of a document.

Terms of Reference permit the Tribunal to hear disputes arising only under the 1984 Agreement, the Tribunal is without jurisdiction to rule on the counterclaim for approximately U.S. $207,112. Thus, the counterclaim for approximately U.S. $207,112 is denied. (Award, p. 57; emphasis in original).

Defendants argue vehemently that the counterclaim arising out of the 1982 Agreement has been determined on the merits. They claim that Apollo's assertion that the above quoted passage be deemed a "dismissal not on the merits" is "a baseless and specious argument." In support of this contention, they note that the Award concludes by stating that "[t]his award is in full settlement of all claims and counterclaims submitted to this Arbitration." Award, p. 70. Further, they note that under the ICC Rules "arbitral awards shall be final." ICC Rules Article 24(1). Finally, they argue that the Tribunal's ruling is neither ambiguous or inconsistent.

This court disagrees.

■ This court finds that the above quoted passage cannot be interpreted as anything but a denial of jurisdiction over the 1982 Agreement counterclaims.[16] It is irrelevant that such denial was mistaken or unexplained. True, the Tribunal concluded that the Award "is in full settlement of *all claims and counterclaims submitted* to this Arbitration." (emphasis added). It is clear, however, from the Tribunal's unambiguous denial of jurisdiction, that they did not consider claims under the 1982 Agreement to have been within the scope of the Arbitration. It would therefore be wrong to consider them as having been "submitted". As for the finality of the Award under ICC Rules Article 24, this

decision in no way disturbs the Award. It merely determines the scope.

■ That the final sentence of the decision on the counterclaim states that it is "denied" is of no matter. The counterclaim could not have been "denied", as that term is used in this context, because the Tribunal, by its own admission, did not decide the issue. Rather, their use of the word "denied" can be seen as unfortunate draftsmanship. Nothing in Award discusses the merits of the counterclaim or evidence presented by either party.

■ This court, therefore, concludes that the Tribunal's decision "denying" the 1982 Agreement counterclaims was jurisdictional, and not a determination on the merits. Defendants have argued that, should the court "somehow find[ ] a basis to consider [Apollo's claims], the court should consider defendants' request to modify with respect to the interest calculation." As Defendants themselves have argued throughout, this court does not have the power to alter or modify the substantive findings of the Tribunal. Their complained of issues, i.e., the chosen date for calculation of interest and the conversion of the award from Swedish crowns to dollars, clearly fall within the prerogatives of the Tribunal.

■ The issue of the counterclaims arising out of the 1982 Agreement has yet to be ruled upon by a competent authority. Again, it is undisputed that the issue was properly put before the court in Apollo's original answer. It is also clear, from admissions by the Defendants, that Apollo's claims have merit.[17] The Convention was drafted to afford quick and *complete* resolution of disputes. Article V(1)(b) of the Convention has

---

**16.** Further evidence is contained in the Tribunal's allowance of the counterclaim in the amount of $10,978.78. The Tribunal decided:
> 2. *Defendant Is Entitled to Setoff the Sum It Must Pay Claimants with Its Counter-claim in the Amount of U.S. $10,978.78.* Because Defendant's counterclaim in the amount of U.S. $10,978.78 ... is a debt arising under the 1984 Agreement, the Tribunal does have jurisdiction *to rule upon that portion of the counterclaim.*

Award, p. 5.
The Tribunal awarded this set-off, after denying the motion to put the claim before them, based

on "basic principles of fairness." Certainly, if the Tribunal thought they had the 1982 Agreement in front of them, the same principles of fairness would dictate allowing a set-off of these monies.

**17.** This opinion in no way determines whether Apollo does, in fact, deserve an award based on the unpaid invoices from the 1982 Agreement. Defendants claim to have defenses to payment and, therefore, the issue must be decided after a hearing.

been interpreted as sanctioning the application of the forum state's standards of due process. *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier,* 508 F.2d 969, 975 (2nd Cir.1974). Without deciding the issue, it would appear that not allowing Apollo the opportunity to be heard on a counterclaim it adequately raised may violate our notions of justice and fair play. *See Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Iran Aircraft Indus. v. Avco Corp.,* 980 F.2d 141 (2d Cir.1992) (refusing to confirm an award under Article V(1)(b) because the party had been led to believe that its condensed submissions of proof were adequate, yet later lost on the grounds of insufficiency of proof). Instead, pursuant to this court's powers under 9 U.S.C. § 206,[18] the parties are ordered to attend the arbitration proceeding presently stayed in France.[19]

■ Apollo has requested a stay of the confirmation award pending the outcome of the France Arbitration. This court is without that power. The Convention only authorizes a stay under one narrow provision. Article VI states:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in Article V paragraph (1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

This section is intended to prevent inconsistent verdicts wherein one court confirms an award while a petition challenging the award is pending in another. *See, e.g., Fertilizer Corp. of India v. IDI Management,* 517 F.Supp. 948. We do not have that situation here.[20]

### III.

#### *Conclusion*

For the foregoing reasons, Defendants' Motion to Confirm Arbitration Award is ALLOWED; Defendants' Motion to Dismiss is ALLOWED, to the extent consistent with this opinion; Plaintiff's Motion to Compel Arbitration is ALLOWED. The case is otherwise closed.

---

18. "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

19. The ICC has already noted probable jurisdiction over this second arbitration.

20. The other decision cited by Apollo, *Puerto Rico Maritime Authority v. Star Lines,* 454 F.Supp. 368 (S.D.N.Y.1978), is inapplicable as it was decided under the more lenient language of the Federal Arbitration Act. 9 U.S.C. § 10(d).