United States Court of Appeals,

Fifth Circuit.

No. 93-1838.

In the Matter of William COXSON and Dorothy Coxson, Debtors.

William COXSON and Dorothy Coxson, Appellants, Cross-Appellees,

v.

COMMONWEALTH MORTGAGE COMPANY OF AMERICA, L.P. and First
Nationwide Bank, Appellees, Cross-Appellants.

Jan. 26, 1995.

Appeal from the United States District Court for the Northern
District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

William and Dorothy Coxson, the appellants, purchased a house
and lot in Dallas, Texas in March, 1974. To finance their home,
the Coxson's executed a promissory note and a deed of trust
granting a purchase money lien on the house and lot to secure the
note. After experiencing financial difficulties, the Coxsons filed
for bankruptcy protection under Chapter 13 in February, 1987. The
Coxsons defaulted on their payments on the note after the
bankruptcy petition was filed, and on May 11, 1988, the loan
servicing agent and the holder of the note, First Nationwide Bank
and Commonwealth Mortgage Company of America (hereinafter
collectively referred to as "Commonwealth")[1] moved for relief from
the automatic stay provisions of the Bankruptcy Code. The

---

[1]The Coxsons executed the note with the Exchange Mortgage
Company. However, Commonwealth Mortgage Company obtained the
note sometime prior to this suit.

bankruptcy court, in July, 1988, issued an order restructuring the Coxsons' payments and establishing procedural requirements for foreclosure. The order was styled "Agreed Order Conditionally Modifying Stay" ("Agreed Order"). Two months later, Commonwealth served notice on the Coxsons, stating that they were in default according to the terms of the Agreed Order. Commonwealth attempted to foreclose on the Coxsons' home in April of 1989, but it failed to follow the requirements for foreclosure set forth in the Agreed Order. The Coxsons filed a state court action and obtained a restraining order temporarily enjoining the foreclosure. However, the state court action was soon dismissed. The Coxsons did not keep current on the note, and Commonwealth attempted to foreclose on the property again.

In response to the Commonwealth's latest foreclosure effort, the Coxsons filed this adversary proceeding against Commonwealth in the bankruptcy court. The Coxsons claimed that the note violated Texas usury law, that the loan documents violated the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.,* ("TILA"), and that Commonwealth violated the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(h). The bankruptcy court enjoined Commonwealth from foreclosing on the property and conducted a bench trial. The bankruptcy court held that the applicable statutes of limitations barred the usury and TILA claims, and that Commonwealth's attempted foreclosure in April of 1989 violated the automatic stay. The bankruptcy court awarded the Coxsons $2,850, without prejudgment interest, for legal fees and costs incident to

the temporary restraining order against Commonwealth. The bankruptcy court found that Commonwealth was 75% successful and the Coxsons 25% successful in the proceedings, and awarded each party a prorated amount of their legal fees pursuant to contractual provisions in the note and the Declaratory Judgment Act. The Coxsons appealed to the district court. The district court determined that the statutes of limitations did not bar the usury or TILA claims. The district court held, however, that the note was not usurious under Texas law. The district court found that the TILA claim had merit and awarded the Coxsons a $2,000 offset against the debt held by Commonwealth. Both parties appealed to this court.

The Coxsons make essentially three arguments on appeal. First, they argue that the note was usurious under Texas law. Second, they claim that the bankruptcy court erred in failing to award prejudgment interest. Finally, they argue that the bankruptcy court erred in judging the magnitude of their success below and did not properly apportion attorneys' fees. Commonwealth's sole argument on appeal is that the district court erred in allowing the Coxsons to assert their TILA claim defensively as recoupment against the note, thereby avoiding the one-year statute of limitations for TILA actions.

I.

In Texas, the regulation of interest rates has produced statutes and legal opinions over the past century. The Texas Constitution, as amended in 1891, expressly delegated authority to

3

the legislature to regulate interest rates and money lending. Article XVI, § 11.[2] In 1961, the Constitution set the maximum rate of interest at ten percent per year. *Id.* The provisions of legislature's usury statute are not as clear-cut as the Constitution. For example, the statutory definitions of key terms like "interest" and "usury" are somewhat circular.[3] Thus, the courts have played a crucial role in interpreting the usury law.

The usury issue in the case at hand is whether a contract is usurious if it has no express provision for the refund or credit of unearned interest which would otherwise render the contract usurious upon the occurrence of some contingency. In this case, the contingency involves the application of an acceleration clause, which, at the option of the holder of the note, would render the entire debt, including principal and unearned interest, due upon the default of the borrower. If the debt were accelerated very early in the loan period in this case, the interest and fees which are considered interest in Texas[4] would have exceeded the legal

---

[2]This Article marked a departure from the previous policy in Texas. During Reconstruction, the state legislature abolished limits on interest rates. In 1869, Article XII, § 44 of the Texas Constitution eliminated the usury laws. However, credit abuses arose in the absence of usury laws, and the Texas Constitution was amended. *See Allee v. Benser,* 779 S.W.2d 61, 62 (Tex.1988).

[3]The usury statute defines "interest" as "the compensation allowed by law for the use or forbearance or detention of money." Tex.Civ.Stat.Ann. art. 5069-1.01(a). Usury is defined as "interest in excess of the amount allowed by law." Tex.Civ.Stat.Ann. art. 5069-101(d).

[4]*See Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 787 (Tex.1977).

4

interest rate and would render the contract usurious if the excess interest were not refunded to the debtor or applied to the principal amount of the loan.[5] Texas jurisprudence provides a framework for determining whether such a contract violates the usury laws.

The progenitor of the Texas Supreme Court's modern usury jurisprudence is the seminal case of *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 30 S.W.2d 282 (1930), *cert. denied,* 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). The contract in *Shropshire* provided for interest charges which would exceed the legal rate if the debtor had defaulted and if the debt had been accelerated according to an acceleration clause in the note. *Id.* 30 S.W.2d at 282-83. In determining whether this contingency poisoned the contract as usurious, the court stated:

> *[A] contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest,* whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction,* and the means used to effect the loan, he may *by its enforcement* be enabled to get more than the legal rate.

*Shropshire,* 30 S.W.2d at 285-86 (quotation omitted). The Texas Supreme Court revisited the principles enunciated in *Shropshire* in

---

[5]It is worth noting that the time period in which this contingency could have possibly rendered the contract usurious passed well before the Coxsons defaulted on the note. Therefore, the discussion of the occurrence of this contingency is entirely hypothetical.

5

*Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333, 340-41 (Tex.1980). In *Smart,* the court stated that the actual language of the contract should be reviewed when examining a contract for usury. If the affirmative terms of the entire contract could yield a usurious result, then the contract is "facially" usurious. *Id.* at 341. However, the court also noted that

> [U]nless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the unearned interest should not be collected.

*Smart,* 597 S.W.2d at 341 (quoting *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935, 937 (Tex.Comm.App.1935)). The *Smart* court held that the contract in issue was usurious, because the contract expressly provided for the collection and retention of unearned, usurious interest. *Smart,* 597 S.W.2d at 341. However, the court stated that the contract at issue was "not merely silent" as to whether prepaid interest would be credited or refunded. *Id.* The court emphasized that "[t]his is not a situation in which the contract is silent on whether the lender will collect unearned interest upon default and acceleration of maturity." *Id.* However, today we are faced squarely with this situation—the contract here is silent on the issue of whether such interest would be refunded or credited to the principal of the debt in the event of acceleration. Thus, this contract is distinguishable from the *Smart* contract, and we are guided by the general rule that the court should give the contract a construction that the parties intended that the unearned interest would not be retained at

foreclosure. In *Walker,* which was reaffirmed in *Smart,* the court followed the "the equitable rule which requires a surrender of unearned interest in order to obtain a foreclosure" to find that the contract was not usurious based on a potentially usurious contingency. *Walker,* 80 S.W.2d at 937. In applying the Texas rules to a hypothetical situation where the contract at issue in this case is accelerated early in the loan period, we find that Commonwealth would have to surrender unearned interest to the Coxsons in order to foreclose on the note. Therefore, even if the contingency transpired, Commonwealth would not "get more than the lawful rate of interest" as proscribed by *Shropsire.* 30 S.W.2d at 285. Thus, the contract is not usurious.

## II.

The Coxsons claim that they are entitled to prejudgment interest on their recovery. The Coxsons argue that without an award of prejudgment interest, they will not be compensated for the loss of the use of their money from May of 1989 to the date of the judgment. Aside from complaining about the "inequity" of the bankruptcy court's and district court's decision to deny prejudgment interest, the Coxsons fail to mention any factor justifying such an award.

The Fifth Circuit has stated that "[t]he award of prejudgment interest is generally discretionary with the trial court." *Whitfield v. Lindemann,* 853 F.2d 1298, 1306 (5th Cir.1988); *Katsaros v. Cody,* 744 F.2d 270, 281 (2nd Cir.1984) (stating that standard of review for award of prejudgment interest is abuse of

7

discretion).  The Supreme Court stated that prejudgment interest,

> is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness.  It is denied when its exaction would be inequitable.

*Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403

(quoting *Board of Commissioners of Jackson County v. United States,*

308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)).  The

Coxsons argue that the bankruptcy court's decision to deny

prejudgment interest should be reversed because the court failed to

express its reasons.  The Coxsons rely on *Whitfield.*  The *Whitfield*

court, however, did not hold that such a statement of reasons is

required when a court denies prejudgment interest.[6]  As was the

case in *Blau,* "both courts below denied interest here and we cannot

say that the denial was either so unfair or so inequitable as to

require us to upset it."  *Blau,* 368 U.S. at 414, 82 S.Ct. at 457.

### III.

The Coxsons argue that the district court erred in failing to

modify the amount of attorney's fees granted by the bankruptcy

court.  A grant of attorney's fees is reviewed for an abuse of

---

[6]The language in *Whitfield* that arguably supports the Coxsons' argument is found in dicta which is tied to the facts of that particular case.

> If the instant case is appealed again to this Court following the remand we now order, we will be greatly assisted in reviewing the district court's discretionary allowance of section 6621 prejudgment interest if it is accompanied by a brief statement of reasons.

*Whitfield,* 853 F.2d at 1307.  This statement does not constitute a mandatory rule applicable to every case where prejudgment interest is requested.

8

discretion. *Texstar North America, Inc. v. Ladd Petroleum Corp.,* 809 S.W.2d 672, 679 (Tex.Civ.App.—Corpus Christi 1991); *Hartford Casualty Ins. Co. v. Budget Rent-A-Car Systems, Inc.,* 796 S.W.2d 763 (Tex.Civ.App.—Dallas 1990). The district court grounded its decision in the facts it found and the parties' statutory and contractual rights, and there is no evidence in the record to support the conclusion that the court abused its discretion in this case.

IV.

Commonwealth argues that the Coxsons' TILA claim is time-barred. The limitations provision in TILA states,

> Any action under this section may be brought ... within one year from the date of the occurrence of the violation. This subsection does not bar a person form asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e). Commonwealth argues that the TILA claim in this case is not a defensive recoupment action, and that therefore it is barred by the limitations period. Recoupment is defined as,

> [t]he right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract.

Ballantine's Law Dictionary 1070 (3d ed.1969) (quoted in *In re Smith,* 737 F.2d 1549, 1552 n. 7 (11th Cir.1984)). The Supreme Court, in *Bull v. United States,* held that

> recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

9

*Bull,* 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935) (footnote omitted). Judge Wisdom, sitting by designation with the Eleventh Circuit, interpreted the language in *Bull* as establishing a three-part test to determine whether a recoupment claim is raised as a defense.

> Thus, to maintain [a] claim ... for monetary damages under *Bull,* [the claimant] must show that (1) the TILA violation and the creditor's debt arose from the same transaction, (2) [the claimant] is asserting her claim as a *defense,* and (3) the "main action" is timely. All three requirements must be satisfied.

*In re Smith,* 737 F.2d at 1553. The court in *Smith* observed that there is diverging authority on the classification of TILA claims as recoupment or setoff actions. *In re Smith,* 737 F.2d at 1552-53; *see also In re Jones,* 122 B.R. 246, 249 (W.D.Pa.1990).

Commonwealth argues that the Coxsons' TILA claim fails the second step of the test in *Bull* because the claim was not raised defensively. Commonwealth argues that the Coxsons "hauled" Commonwealth into court and initiated this lawsuit, and therefore the TILA claim is used offensively, rather than defensively. The district court disagreed, holding that the Coxsons filed this suit in response to Commonwealth's filing of a proof of claim in the bankruptcy court and its foreclosure actions. The district court reasoned that filing a proof of claim is "an action to collect the debt," and therefore the TILA claim was timely under 15 U.S.C. § 1640(e). We agree with the district court's analysis. In this case, Commonwealth's and the Coxsons' claims arise from the same underlying transaction, the contract for financing the Coxsons' home. *See Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357,

10

1361 (5th Cir.1979); *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 383 (6th Cir.1984). The mere fact that the Coxsons were the plaintiffs in the case below does not preclude the finding that their TILA claim was raised defensively. *See, e.g., In re Jones,* 122 B.R. 246 (plaintiff permitted to raise TILA recoupment claim defensively). Furthermore, Texas state courts have held that a TILA claim may be asserted defensively as a recoupment action against a lender attempting to enforce contractual obligations. *Garza v. Allied Finance Co.,* 566 S.W.2d 57, 62-63 (Tex.Civ.App.—Corpus Christi 1978); *Cooper v. RepublicBank Garland,* 696 S.W.2d 629, 634 (Tex.Civ.App.—Dallas 1985) (holding that recoupment claim was raised defensively in response to creditor's foreclosure efforts). We find that the TILA claim was not barred by the statute of limitations, and therefore remand the issue for consideration of the merits of the claim.

V.

For the above reasons, the district court's judgment is AFFIRMED.

11