In re Dorothy BOTELHO, Debtor.

Dorothy BOTELHO, Plaintiff,

v.

CITICORP MORTGAGE, INC., Defendant.

Bankruptcy No. 95–13744–JNF.
Adv. No. 95–1468.

United States Bankruptcy Court,
D. Massachusetts.

May 21, 1996.

Sara M. Quinn, Richard McMahon, Southeastern Mass. Legal Assistance Corp., New Bedford, MA, for Debtor.

Donald H. Carvin, Braintree, MA, for Citicorp Mortgage, Inc.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court in this adversary proceeding is the defendant's Motion to Dismiss Adversary Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The plaintiff filed an objection to the motion, and the Court held a hearing in this matter on January 22, 1996. At the conclusion of the hearing, the Court ordered that supplemental briefs be filed by March 15, 1996. The defendant filed a supplemental brief on March 15, 1996, and the plaintiff filed a response on April 5, 1996. On April 9, 1996, the defendant moved for additional time to file a reply brief to the plaintiff's response brief and also sought an order that no further briefs be filed without order of the Court. The Court allowed the motion on April 10, 1996, and ordered the defendant to file its reply brief by April 19, 1996.

 The Court will treat the Motion to Dismiss as a Motion for Summary Judgment. The material facts necessary to decide this matter, which the Court has gleaned from the pleadings and exhibits as well as the Debtor's petition and schedules, are not in dispute.

### II. FINDINGS OF FACT

Dorothy Botelho (the "Debtor") resides at 63 Adirondack Road, Westport, Massachusetts (the "property"). The Debtor, Barbie Jo Botelho ("Ms. Botelho") and Nazih B. Elkallassi ("Mr. Elkallassi") own the property as joint tenants with rights of survivorship. However, neither Ms. Botelho nor Mr. Elkallassi occupies the property. On December 11, 1989, the Debtor, Ms. Botelho and Mr. Elkallassi entered into a "Rapid Equity Mortgage Note" with Citicorp Mortgage, Inc. ("Citicorp") in which they promised to repay $59,150.00 at an annual rate of 10.25% (the "1989 transaction"). As security for the loan, they granted Citicorp a mortgage on the property, which mortgage was properly recorded on December 15, 1989.

Also on December 11, 1989, the Debtor signed a receipt in which she acknowledged that she received two copies of Citicorp's Notice of Right to Cancel. Although there is no evidence that the Debtor and her co-debtors had borrowed money from Citicorp prior to December 11, 1989, Citicorp provided a notice which stated in relevant part the following:

**Your Right To Cancel**

You are entering into a new transaction to increase the amount of credit provided to you. We acquired a mortgage/deed of trust on your home under the original transaction and will retain that mortgage/deed of trust in the new transaction. You have a legal right under federal law to cancel the new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is December 11, 1989; or

(2) the date you received your new Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage/deed of trust we already have on your home. If you cancel, the mortgage/deed of trust as it applies to the increased amount is also cancelled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that our mortgage/deed of trust on your home no longer applies to the increase of credit. We must also re-

turn any money you have given to us or anyone else in connection with the new transaction. . . .

Neither Ms. Botelho nor Mr. Elkallassi signed the receipt.

On May 25, 1995, the Debtor's counsel sent a letter to Citicorp in which she indicated that the Debtor was rescinding the 1989 transaction pursuant to the federal Truth-in-Lending Act, 15 U.S.C. §§ 1601–1667e (West 1982 & Supp.1996) ("TILA"), and the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, §§ 1–34 (West 1991 & Supp.1996) ("CCCDA"), as well as the regulations promulgated in accordance with each statute. The letter demanded that Citicorp return all monies paid by the Debtor and take all steps necessary to terminate its security interest in the property. To date, Citicorp has refused the Debtor's demands.

On May 31, 1995, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On Schedule A—Real Property, she listed the property, which she valued at $35,000.00, and noted that "[t]he interest of each debtor, which cannot be sold or assigned without the other's consent is worth considerably less than one-third this amount." On her Statement of Financial Affairs, she indicated that she received a notice of foreclosure from Citicorp on March 31, 1995.[1]

On Schedule D—Creditors Holding Secured Claims, the Debtor listed no secured creditors. On Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debt-

or listed Citicorp with a claim in an estimated amount of $22,729.17. She described the debt owed to Citicorp as a second mortgage which she had rescinded.[2] The Debtor calculated Citicorp's claim based upon the amount financed, ($57,593.13),[3] less the amount she paid to Citicorp from February 1, 1990 through November 1, 1994 ($32,863.96), less statutory damages pursuant to TILA ($2,000). However, on August 17, 1995, Citicorp filed a Proof of Claim in the amount of $64,108.27.

The Debtor filed her initial Chapter 13 plan on June 15, 1995.[4] Through her plan, she proposed to treat the debt owed to Citicorp as an unsecured claim by virtue of her attorney's May 25, 1995 letter to Citicorp rescinding the transaction. On July 7, 1995, the Debtor filed a First Amended Chapter 13 Plan, which provided for a dividend to unsecured creditors in an indeterminate amount. Citicorp objected to the First Amended Plan on grounds that the Debtor's federal and state truth in lending claims were barred by the respective three and four-year statutes of limitations. The Debtor filed a response to Citicorp's objection, in which she argued that her truth in lending claims were not time-barred because she had raised them in defense to Citicorp's foreclosure action.

The Debtor commenced this adversary proceeding on August 8, 1995. In her Second Amended Complaint, which was filed on January 16, 1996,[5] she alleged that Citicorp "furnished incorrect rescission forms" to her in connection with the 1989 transaction. Specifically, the Debtor claimed that the No-

---

1. The Debtor has not submitted a copy of the notice of foreclosure sale or other evidence of the foreclosure. However, since Citicorp has not denied the allegation that it commenced foreclosure of the mortgage, the Court will accept it as being true for purposes of deciding the motion to dismiss.

2. Because there are no secured creditors listed on Schedule D and because Citicorp has not alleged that the 1989 transaction constituted either a refinancing or a second loan to the Debtor, the reason for the Debtor's characterization of Citicorp's claim as a second mortgage is unclear. Since the reference to a second mortgage does not appear elsewhere in the schedules, pleadings or exhibits, the Court assumes for the purpose of deciding Citicorp's motion that Citicorp held a first mortgage on the property.

3. The Note states that the principal amount of the loan was $59,150.00.

4. The Debtor's plan does not conform to the model form attached to and required by the Court's Joint Procedural Order dated September 1, 1994.

5. After the January 22, 1996 hearing in this matter, Citicorp opposed the Debtor's motion to file a Second Amended Complaint. As the matter had already been taken under advisement, the Court did not act upon either motion. However, like her Second Amended Complaint, the Debtor's Amended Complaint alleged that Citicorp failed to provide her with the proper notice of her right to rescind.

tice of Right to Cancel given to her by Citicorp was based upon Rescission Model Form H–9, issued by the Board of Governors of the Federal Reserve System (the "Board") and applicable only to refinancing transactions, rather than Rescission Model Form H–8, applicable generally. Additionally, the Debtor alleged that Citicorp failed to accurately disclose the amount financed, in violation of both TILA and CCCDA, by failing to disclose that a portion of the loan proceeds were being held in escrow for future advances. Through her Second Amended Complaint, the Debtor seeks the following relief: (1) a declaration that she validly rescinded the 1989 transaction; (2) a determination that Citicorp's claim is unsecured and an adjustment of its proof of claim; (3) dismissal of Citicorp's objection to the plan; (4) statutory damages under TILA and CCCDA in the amount of $2,000.00; and (5) attorneys' fees and costs under TILA and CCCDA.

On November 15, 1995, Citicorp moved to dismiss the Debtor's amended complaint on grounds that both her federal and state truth in lending claims are barred by the respective three and four-year statutes of limitations. On January 16, 1996, the Debtor objected to Citicorp's Motion to Dismiss.

## III. POSITIONS OF THE PARTIES

### A. *Citicorp*

Citicorp first contends that the respective three and four-year statutes of limitations governing rescission under TILA and CCCDA constitute an "absolute" bar to the Debtor's action. Alternatively, citing *McGuinness v. Cotter*, 412 Mass. 617, 591 N.E.2d 659 (1992), and *Nissan Motor Corporation in U.S.A. v. Commissioner of Revenue*, 407 Mass. 153, 552 N.E.2d 84 (1990), Citicorp argues that the limitations provisions contained in both TILA and CCCDA are statutes of repose and not statutes of limitations. Therefore, in Citicorp's view, the statutes create an "insurmountable bar" to the Debtor's action and, as a result, this Court lacks subject matter jurisdiction over the adversary proceeding.

Initially, Citicorp failed to distinguish between affirmative and defensive use of TILA

and relied upon cases in which affirmative claims were determined to be time-barred. Alternatively, Citicorp concedes that TILA expressly allows claims for damages to be asserted via recoupment after the expiration of the statute of limitations. However, it argues that the lack of such statutory language in the section governing rescission indicates that recoupment is not available.

Finally, Citicorp contends that the Debtor's Amended Complaint fails to allege sufficient facts to establish violations of TILA and CCCDA. It claims that the Notice of Right to Cancel contains all disclosures required by federal and state law. Citicorp urges the Court to "balance the equities" in its favor because, in a bankruptcy case, "the secured creditor stands to lose both its security and any hope of collecting on the underlying debt."

### B. *The Debtor*

The Debtor argues that Citicorp's motion to dismiss should be denied because the TILA and CCCDA limitations periods are not applicable to claims that are raised in defense to a foreclosure proceeding. She cites cases from other jurisdictions in which various courts have held that truth in lending claims may be asserted under a recoupment theory after the expiration of the statute of limitations. The Debtor argues that Congress "sanctioned" these holdings when it amended TILA in 1995 and provided that a consumer may rescind a transaction by way of recoupment to the extent allowed by state law. According to the Debtor, although there is no Massachusetts caselaw on point, M.G.L. c. 260, § 36 allows time-barred claims to be raised as defenses to actions.

In her response to Citicorp's motion, the Debtor contends that it is premature to consider the equities of the case, as Citicorp suggests. Alternatively, citing *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1 (1981), she asserts that TILA imposes strict liability upon lenders for truth in lending violations.

## IV. DISCUSSION

The issue for determination is whether the Debtor may assert claims for both rescission

and damages based upon TILA and CCCDA in defense to Citicorp's foreclosure action even though such claims would be barred by the relevant statutes of limitations if raised affirmatively. The issue appears to be one of first impression in the First Circuit. The Court must first determine if the Debtor's claim is in the nature of recoupment. If so, then the Court will consider whether the statute of limitations bars the Debtor's action.

◼ The common law doctrine of recoupment "permits the crediting of reciprocal rights against each other where those rights arose under the same transaction, typically the same contract." *Mohawk Industries, Inc. v. United States of America (In re Mohawk Industries, Inc.)*, 82 B.R. 174, 176 (Bankr.D.Mass.1987). *See also United Structures of America, Inc. v. G.R.G. Engineering, S.E.*, 9 F.3d 996, 999 (1st Cir.1993) (recoupment "is 'in the nature of a defense' and is intended to 'permit ... judgment to be rendered that does justice in view of the one transaction as a whole.'") (citation omitted); *Bob Brest Buick, Inc. v. Nissan Motor Corporation in U.S.A. (In re Bob Brest Buick, Inc.)*, 136 B.R. 322 (Bankr.D.Mass. 1991). Recoupment has been incorporated into the counterclaim in modern practice and procedure. However, common law recoupment is still recognized by courts as a valid defense. *See generally* Comment, *Truth in Lending and the Statute of Limitations*, 21 Vill.L.Rev. 904, 905–909 (1975).

In *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), the Supreme Court of the United States recognized the defense of recoupment in a tax case. The Court held that "... recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Id.* at 262, 55 S.Ct. at 700–01. The Court allowed an overpayment of an estate tax, which could not be recovered by the estate since the statute had run, to be credited against the estate's income tax deficiency. *Id.* at 263, 55 S.Ct. at 701.

In *U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the Supreme Court further stated that

The purpose of [statutes of limitations] is to keep stale litigation out of the courts. They are aimed at lawsuits, not at the consideration of particular issues in lawsuits.... To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation. We think it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law. If [the] litigation is not stale, then no issue in it can be deemed stale.

352 U.S. at 72, 77 S.Ct. at 169.

◼ In order to raise her TILA claims by way of recoupment, the Debtor must satisfy a three-pronged test. She "must show that (1) the TILA violation and the creditor's debt claim arose from the same transaction, (2) she is asserting her claim as a *defense*, and (3) the 'main action' is timely." *Smith v. American Financial Systems, Inc. (In re Smith)*, 737 F.2d 1549, 1553 (11th Cir.1984) (emphasis in original). *See also Coxson v. Commonwealth Mortgage Co. of America, L.P. (Matter of Coxson)*, 43 F.3d 189, 193 (5th Cir.1995); *Shaw v. Federal Mortgage & Investment Corp. (In re Shaw)*, 178 B.R. 380, 386 (Bankr.D.N.J.1994). The Court has little trouble finding that all three requirements have been met in the instant case. Both the alleged TILA violations and Citicorp's claim arose from the 1989 transaction. It is undisputed that the Debtor asserted her right to rescind the transaction in defense to Citicorp's foreclosure. The fact that the Debtor is the plaintiff in this adversary proceeding does not preclude the Court from finding that she raised her TILA claims defensively. *Coxson*, 43 F.3d at 194. Additionally, the foreclosure proceeding and Citicorp's filing of its proof of claim were timely. Therefore, the Debtor's adversary proceeding is an action for recoupment.

## A. *Truth in Lending*

TILA was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C. § 1601(a). Pursuant to section 1604 of TILA, the Board promulgated Regulation Z, 12 C.F.R. § 226, and published model disclosure forms. TILA and Regulation Z require creditors to clearly and conspicuously disclose certain credit-related information. 15 U.S.C. § 1632; 12 C.F.R. § 226.6. TILA provides consumers with remedies in the forms of both a right of rescission and a right to damages. 15 U.S.C. §§ 1635, 1640.

Section 1635 of TILA governs rescission and provides, in relevant part, the following:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor.... The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with the regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor ... becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor....

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction ... notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor....

15 U.S.C. § 1635. Affirmative claims for rescission are subject to the three-year limitation provided by section 1635(f). *See also* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation....").

Civil liability under TILA is governed by section 1640, which provides, in relevant part, the following:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title ... with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, ... or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; ...

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the

action, together with a reasonable attorney's fee as determined by the court. . . .

\* \* \* \* \* \*

(e) Any action under this section may be brought . . . within one year from the date of the occurrence of the violation. *This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. . . .*

15 U.S.C. § 1640 (emphasis added).

CCCDA and the regulations promulgated by the Massachusetts Division of Banks and Loan Agencies, 209 C.M.R. § 32.00 *et seq.,* essentially mirror the provisions of TILA and Regulation Z. *Whitley v. Rhodes Financial Services, Inc. (In re Whitley),* 177 B.R. 142, 147 (Bankr.D.Mass.1995) (citation omitted); *Lynch v. Signal Finance Co. of Quincy,* 367 Mass. 503, 505, 327 N.E.2d 732 (1975). The major difference between TILA and CCCDA is the period of limitations for rescission and damages claims. Under CCCDA, a consumer's affirmative right to rescind a transaction is extended to four years. G.L. c. 140D, § 10(f); 209 C.M.R. § 32.15(1)(c). Additionally, G.L. c. 260, § 5A, which governs limitations of consumer protection actions, provides that:

[a]ctions arising on account of violations of any law intended for the protection of consumers, including but not limited to . . . chapter one hundred and forty D . . . whether for damages, penalties *or other relief . . . shall be commenced only within four years next after the cause of action accrues.*

G.L. c. 260, § 5A (emphasis supplied). Like its federal counterpart, CCCDA has a separate section for civil liability, which provides that:

This subsection shall not bar a consumer then in default on the obligation from asserting a violation of this chapter, or any

rule or regulation issued thereunder, as an original action, *or as a defense or counterclaim to an action to collect amounts owed by the consumer* brought by a person liable under this chapter, or any rule or regulation issued thereunder.

G.L. c. 140D, § 32(g) (emphasis added).

Because the provisions of TILA and CCCDA are "substantially similar," the Board, in accordance with 15 U.S.C. § 1633,[6] exempted from chapters two and four of TILA credit transactions that are subject to CCCDA. *See* 48 Fed.Reg. 14882, 14890 (April 6, 1983); *Whitley,* 177 B.R. at 148; *Myers v. Federal Home Loan Mortgage Co. (In re Myers),* 175 B.R. 122, 125–6 (Bankr. D.Mass.1994). Both section 1635 and section 1640 are included in chapter two of TILA. The exemption is limited, however, because Regulation Z provides that "[n]o exemptions granted under this section shall extend to the civil liability provisions of . . . [TILA]." 12 C.F.R. § 226.29(b)(1). The Board explained that "[t]he provision that an exemption may not extend to [the civil liability provisions of TILA] assures that consumers retain access to both federal and state courts in seeking damages or civil penalties for violations, while creditors retain the defenses specified in [TILA]." Official Staff Commentary § 226.29(b)–1.

Because the provisions of CCCDA parallel those of TILA, CCCDA "should be construed in accordance with federal law." *Mayo v. Key Financial Services, Inc.,* No. 92–6441–D, slip op. at 3, 1994 WL 879676 (Superior Court June 22, 1994). Thus, the Court may look to federal case law to determine if relief is available to the Debtor by way of recoupment for both rescission and damages.

The language of 15 U.S.C. § 1640(e) explicitly exempts recoupment claims from the one-year statute of limitations. A majority of courts has allowed debtors to raise TILA claims for damages under section 1640(e) by way of recoupment beyond the statutory one-

---

**6.** "The Board shall by regulation exempt from the requirements of this part any class of credit transactions within any State if it determines that under the law of that State that class of transac-

tions is subject to requirements substantially similar to those imposed under this part, and that there is adequate provision for enforcement." 15 U.S.C. § 1633.

year period. In *Coxson*, the Fifth Circuit Court of Appeals held that the creditor's filing of a proof of claim constituted "an action to collect the debt" pursuant to section 1640(e) and, therefore, the debtor's TILA claim was not barred by the statute of limitations. 43 F.3d at 194. *See also Jones v. Progressive–Home Federal Savings & Loan Assoc. (In re Jones)*, 122 B.R. 246, 250 (W.D.Pa.1990); *Werts v. Federal Nat. Mortgage Ass'n (In re Werts)*, 48 B.R. 980, 983 (E.D.Pa.1985); *Kenderdine v. Polonia Federal Savings & Loan Association (In re Kenderdine)*, 118 B.R. 258, 263 (Bankr.E.D.Pa.1990); *Joyce v. Fidelity Consumer Discount Co. (In re Joyce)*, 41 B.R. 249, 251 (Bankr.E.D.Pa.1984); *Galeai v. Associates Financial Services Co. of Hawaii, Inc. (In re Galeai)*, 31 B.R. 629, 634 (Bankr.D.Haw.1981). Additionally, some courts, relying upon *Bull*, allowed consumers to counterclaim for damages under TILA even before section 1640(e) was amended to specifically exempt recoupment claims from the one year statute of limitations. *See Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980); *Household Finance Corp. v. Pugh*, 288 N.W.2d 701 (1980) ("utilization of the 'recoupment doctrine' would enhance the general policy of TILA").

Prior to September 30, 1995, the language of section 1635, unlike section 1640(e), did not expressly exempt recoupment claims with respect to the right of rescission from its statute of limitations. Nevertheless, beginning with the Supreme Court of Colorado's decision in *Dawe v. Merchants Mortg. & Trust Corp.*, 683 P.2d 796 (Colo.1984), many courts held that section 1635's three-year statute of limitations was not applicable to rescission claims that were in the nature of recoupment. *See Shaw*, 178 B.R. at 386; *Federal Deposit Insurance Corp. v. Ablin*, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379 (1988); *Community Nat. Bank & Trust Co. of New York v. McClammy*, 138 A.D.2d 339,

525 N.Y.S.2d 629 (1988). The cases cited by Citicorp are inapposite since they were not decided on recoupment grounds. *See Jamerson v. Miles*, 421 F.Supp. 107 (N.D.Tex.1976) (court lacked subject matter jurisdiction to hear consumer's *affirmative* TILA action brought more than three years after consummation of the transaction); *In re Cox*, 162 B.R. 191 (Bankr.C.D.Ill.1993) (debtors attempted to rescind transaction in response to foreclosure, but recoupment not considered by court).

In *Dawe*, the court cited the Supreme Court's opinion in *Bull* and held that the statute of limitations does not bar the assertion of a claim defensively. 683 P.2d at 800. The court observed that "[i]f recoupment claims were barred by the relevant statute of limitations, lenders could avoid the penalties of [TILA] by waiting . . . three years or more to sue on the borrower's default, and thereby frustrate the fundamental policy of TILA." *Id.* at 801. *See also Ablin*, 177 Ill.App.3d at 395, 126 Ill.Dec. 694, 532 N.E.2d 379.[7] The *Dawe* court also opined that many consumers are ignorant of TILA "until they consult an attorney after the statute of limitations has run. Allowing creditors to profit from a violation of TILA simply because three years has passed would not further the purposes of the Act." 683 P.2d at 801.

In *Ablin*, the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver of a failed bank, brought a foreclosure action against mortgagors who, in turn, counterclaimed and sought rescission of the transaction on grounds that the bank failed to inform them of their right to rescind under TILA. The mortgagors contended that the statute of limitations, which had expired, did not bar their counterclaim. Like Citicorp in the instant case, the FDIC argued in *Ablin* that the absence in section 1635 of a provision similar to section 1640(e)'s recoupment provision indicated that the recoupment de-

---

7. This Court is not unmindful of the fact that debtors may also have an incentive to play a waiting game. In *General Motors Acceptance Corp. v. Audino (In re Audino)*, 10 B.R. 135 (Bankr.D.R.I.1981), Bankruptcy Judge Votolato opined that " . . . to allow a debtor to revive a TILA cause of action merely by not paying the debt, waiting to be sued, and then raising the action as a counterclaim would defeat the very purpose of a statute of limitations." 10 B.R. at 137. However, this Court is not persuaded by the holding in *Audino*, which is distinguishable because it was decided prior to the 1980 TILA amendment that added the recoupment language to section 1640(e).

fense was not available to lengthen the limitations period for rights of rescission. The *Ablin* court flatly rejected that argument and, following *Dawe,* held that section 1635's three-year limitation does not bar a counterclaim. 177 Ill.App.3d at 395, 126 Ill.Dec. 694, 532 N.E.2d 379.

■ This Court agrees with the pre–1995 decisions and holds that the presence of recoupment language in section 1640(e) and its absence in section 1635(f) amounts to a distinction without a difference, in view of the fact that recoupment claims are generally not subject to statutes of limitations. *Dawe,* 683 P.2d at 800; *Shaw,* 178 B.R. at 387.

Alternatively, Citicorp's argument lacks merit as a result of the 1995 amendments to TILA,[8] in which Congress added subsection (i) to section 1635, which provides the following:

**(i) Rescission rights in foreclosure**

**(1) In general**

Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, *in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if—*

. . .

*(B) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.*

\* \* \* \* \* \*

**(3) Right of recoupment under State law**

*Nothing in this subsection affects a consumer's right of rescission in recoupment under State law.*

**(4) Applicability**

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

15 U.S.C. § 1635(i) (emphasis supplied).[9]

The Debtor claims that this section essentially codifies the *Dawe* line of cases. In one of its briefs, Citicorp referred to section 1635(i) in passing and concluded that rescission "is clearly not available in recoupment." Citicorp's reading of the statute cannot be reconciled with the plain language of section 1635(i)(3).

■ According to section 1635(i), which applies retroactively and thus governs the instant proceeding, state law determines whether rescission is available by way of recoupment after the expiration of the statute of limitations. *See* National Consumer Law Center, *Truth in Lending,* § 6.6.3.3.1. (3d ed. 1995). Therefore, the Court must look to Massachusetts law to determine if recoupment is available.

■ M.G.L. c. 260, which governs limitations of actions, provides, in relevant part, the following:

. . . a counterclaim arising out of the same transaction or occurrence that is the subject matter of the plaintiff's claim, to the extent of the plaintiff's claim, may be asserted without regard to the provisions of law relative to limitations of actions.

M.G.L. c. 260, § 36. Because a "section 36 counterclaim [goes] only 'to the extent of the plaintiff's claim,' it corresponds to 'recoupment' in the pre–Rules practice." *Bernstein v. Gramercy Mills, Inc.,* 16 Mass.App.Ct. 403, 409, 452 N.E.2d 231 (1983); *Howell v. Birnberg,* 1994 WL 879659 \*4 (Mass.Super.Ct. No. 92–2842A).[10]

■ The First Circuit Court of Appeals has recognized that counterclaims are

---

8. Pub.L. No. 104–29 (September 30, 1995).

9. The Board has not yet promulgated regulations in response to the 1995 TILA amendments.

10. In fact, in its Reply Memorandum, Citicorp concedes that section 36 is a "codification of the old common-law doctrine of recoupment."

exempt from statutory limitation periods if they are compulsory, that is, if they arise out of the same transaction. *Pahlavi v. Palandjian,* 809 F.2d 938, 943 (1st Cir.1987). The Court has already found that the claims of both Citicorp and the Debtor arose from the 1989 transaction. In *Bose Corp. v. Consumers Union of U.S., Inc.,* 367 Mass. 424, 326 N.E.2d 8 (1975), the Supreme Judicial Court held that the common law concept of recoupment "was generally if not always timely, no matter when actually pleaded in the action, if the plaintiff's claim was timely...." 367 Mass. at 427, 326 N.E.2d 8. Therefore, the Debtor's rescission claim is available by way of recoupment and Citicorp's contention that this Court lacks subject matter jurisdiction over the instant dispute is without merit.[11]

### B. *Rule 12(b)(6)*

█ The Court rejects Citicorp's contention, based upon Fed.R.Civ.P. 12(b)(6), that the Amended Complaint fails to state a claim upon which relief can be granted. *See* Fed. R.Bankr.P. 7012(b). Citicorp argues that the Debtor fails to allege sufficient facts to support her truth in lending claims. The Debtor's Second Amended Complaint supersedes her Amended Complaint. Two of Citicorp's briefs were filed after the Debtor filed her Second Amended Complaint, but Citicorp continues to refer to the Amended Complaint, which is no longer operative in this proceeding. However, the Court finds that both the Amended Complaint and the Second Amended Complaint contain sufficient allegations to state a cause of action.

The Debtor first alleged that Citicorp "furnished incorrect rescission forms" to her. The Board's Model Form H–9 applies to refinancing transactions, in which a consumer's right of rescission extends only to the amount of new credit extended in the transaction. Model Form H–8, on the other hand, applies generally to new loans. Citicorp's contention that its Notice of Right to Cancel disclosed all of the information required to be disclosed under 12 C.F.R. § 226.23(b) is erroneous. Because the 1989 transaction was a home equity loan and not a refinancing, and the Debtor was entitled to rescind the entire transaction rather than only "new credit," the notice did not accurately disclose the "effects of rescission" in accordance with 12 C.F.R. § 226.23(b)(4). The Court finds, as a matter of law, that Citicorp's notice of the Debtor's right to cancel was defective on its face and, therefore, the notice violated TILA and CCCDA. *In re Porter,* 961 F.2d 1066 (3rd Cir.1992) (in a transaction that was partially a refinancing, use of Form H–8 violated TILA). *See also Mayfield v. Vanguard Sav. & Loan Ass'n,* 710 F.Supp. 143, 145 (E.D.Pa. 1989) (bank "failed to properly complete the rescission notices and to provide plaintiff with accurate disclosures").

█ The Debtor also alleged that Citicorp failed to accurately disclose the amount financed which, if proven, would also constitute a violation of TILA and CCCDA.[12] However, the Debtor need allege and prove only one violation in order to be able to rescind the 1989 transaction and recover damages. Thus, the Court rejects Citicorp's argument that the Debtor's Second Amended

---

**11.** The Court holds that Citicorp's distinction between statutes of limitations and statutes of repose, and its contention that TILA and CCCDA fall into the latter category, are irrelevant. The Court agrees with Citicorp that "[i]t has long been the law of [Massachusetts] that, when a remedy is created by statute, and the time within which it may be availed of is one of the prescribed conditions for relief, failure to meet that time limit deprives a ... court ... of jurisdiction to hear the case." *Nissan,* 407 Mass. at 157, 552 N.E.2d 84 (citation omitted). However, both M.G.L. c. 260, § 36 and the cases cited herein explicitly allow the Debtor's claims to be raised in recoupment beyond the limitations period.

**12.** Additionally, the Court notes that Ms. Botelho and Mr. Elkallassi may not have received two copies of the Notice of Right to Cancel since only the Debtor signed the receipt. If true, this would constitute a violation of Regulation Z and the Massachusetts regulations, both of which require that a creditor provide each consumer with two copies of the notice of the right to rescind the transaction. 12 C.F.R. § 226.23(b); 209 C.M.R. § 32.15(2). However, the fact that the Debtor alone sent a rescission letter to Citicorp does not render the rescission invalid. *See* 12 C.F.R. § 226.23(a)(4) ("when more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers"); 209 C.M.R. §§ 32.15(1)(d), 32.23(1)(d).

Complaint fails to state a claim upon which relief can be granted.

The Court need not reach Citicorp's equitable arguments, which are not dispositive of the Motion presently before the Court.

## V. CONCLUSION

For the foregoing reasons, the Court denies the defendant's Motion to Dismiss Adversary Complaint, which the Court has treated as a motion for summary judgment.