van Gestel, J.
This matter is before the Court on cross motions for summary judgment. At issue is the interplay between the effect of the automatic stay in bankruptcy and the difference between setoff and recoupment. At stake is about $500,000 that the Division of Medical Assistance (the “Division”) withheld from Medicaid payments it made to the debtor, CareMatrix Corporation (“CareMatrix”), after its bankruptcy was commenced.
BACKGROUND
Because the facts are essentially agreed to by the parties, the Court will not set out the usual detailed background exposition, but rather will include only a somewhat abbreviated version and also mention such facts as are needed in its discussion of the law.
CareMatrix Corporation, located in Newton, and a number of its subsidiaries and affiliates, manage and operate long-term care facilities for elderly patients. One of those affiliates is CareMatrix of Needham, Inc. (“CM/Needham”).
At all relevant times after June 2, 1997, CM/Need-ham operated a faciliiy called Avery Manor. CM/Need-ham supplanted Continuum Care of Needham, Inc. (“Continuum”) as the operator of Avery Manor.
Avery Manor is a skilled nursing facility with 142 beds, an assisted living facility with 56 units, and a medical office building all located at 98-110 West Street in Needham, Massachusetts. Until June 2, 1997, Continuum owned and operated the Avery Manor facility, including the real property, buildings, and the personal property thereat. On June 2, 1997, Continuum leased to CM/Needham the entire Avery Manor facility, including the real property, buildings, and the personal property thereat, together with the right and obligation to operate the facility for its primary intended use.
Both before and after June 2, 1997, Avery Manor received Medicaid payments from the Division. During the period that Avery Manor was operated by Continuum, it received more than $1.2 million in Medicaid overpayments. These overpayments were determined by an audit by the Division of Health Care Finance and Policy (“DHCFP”) of Avery Manor’s 1994 and 1995 cost reports.
As authorized by 130 C.M.R 450.259, 130 C.M.R. 450.260 and its provider agreements with Avery Manor, to recover the overpayments the Division began withholding a portion of its ongoing Medicaid reimbursements to Avery Manor. By November 9, 2000, the Division had withheld approximately $500,000 of the $1.2 million owed to it by Avery Manor.
On November 9, 2000, CM/Needham, along with CareMatrix and nine of its affiliates, filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware. As of that date, all collection activities, including setoffs within the meaning of Section 553 of the Bankruptcy Code, were enjoined by the automatic stay provisions in 11 U.S.C. Sec. 362(a).
After the commencement of the bankruptcy proceedings, the Division continued its ongoing Medicaid reimbursement payments to Avery Manor, and continued to withhold therefrom amounts related to the overpayments. The Division did this despite never seeking or receiving any relief from the automatic stay. Further, the Division did not otherwise appear in the debtors’ bankruptcy case.
Between November 14,2000, and July 17,2001 the Division withheld from Avery Manor an additional approximately $500,000 of the roughly $700,000 still owed to it.
*469 On August 21, 2001 the Bankruptcy Court entered an order “enjoin[ing] and preclud[ing]” the Division “from exercising against the Debtors any set-off rights allegedly arising under Medicaid.” This order came out of an adversary proceeding that CM/Needham initiated against the Division in early August. The Division did not appear or participate in this proceeding.
It is in this context that this Court must decide whether the withholdings from Avery Manor are re-coupments, not setoffs, and were therefore properly effected without prior authorization of the Bankruptcy Court.
The Court begins with the pertinent parts of the automatic stay in the Bankruptcy Code. Title II in the U.S. Code, in Sec. 362, reads in relevant part:
(a) ... a petition . . . operates as a stay, applicable to all entities, of
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title . . .
These kinds of stays prohibit “the commencement or continuation of a judicial or administrative proceeding against the debtor that could have been initiated before the petition was filed, or to recover on a claim that arose pre-bankruptcy.” United States v. Nicolet, Inc., 857 F.2d 202, 207 (3d Cir. 1988).
Sec. 362(a) applies to “all entities.” The Bankruptcy Code defines the word “entity” as including governmental units. 11 U.S.C. Sec. 101(14). There is, however, an exception for governmental units when exercising their police or regulatory powers. 11 U.S.C. Sec. 362(b). “Congress intended this section to apply where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law.” In re University Medical Center, 973 F.2d 1065, 1074-75 (3d Cir. 1992). Thus, when a governmental unit is acting as a creditor, it is subject to the limitations of Sec. 362(a). Id. at 1074.
Even CareMatrix concedes that “(wjhile setoffs violate the automatic stay, recoupment does not.” See CareMatrix’s Memorandum in Support of its motion at p. 9. The issue to be decided, therefore, is whether the Division’s actions in the Avery Manor situation amounted to a setoff or was in recoupment.
The law dictionary definitions of “recoupment” and “setoff’ present subtle differences between the two words. For example: the first definition of recoupment in the Second Pocket Edition of Black’s Law Dictionary (2001) is, ‘The recovery or regaining of something, esp. expenses”; and for “setoff’ is, “A defendant’s coun-terdemand against the plaintiff arising out of a transaction independent of the plaintiffs claim.” The second definitions of the two words in the same source is, for “recoupment,” “The withholding, for equitable reasons, of all or part of something that is due”; and, for “setoff,” “A debtor’s right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor.” There is no third definition for “setoff,” but there is for “recoupment”; it reads, “Reduction of a plaintiffs damages because of a demand by the defendant arising out of the same transaction.” Interestingly, the third definition for “recoupment” is followed by “Cf. setoff.”
If one assumes the Division to be a debtor to Aveiy Manor for Medicaid payments due and, in using the foregoing definitions, considers the Division’s recovery of Medicaid overpayments by reducing currently due payments as arising from the same transaction, then it can be argued that there is a recoupment. If, on the other hand, the situation arises out of a transaction independent of Avery Manor’s current claim for Medicaid reimbursements, the argument for setoff emerges.
As noted earlier, the overpayments from the Division to Avery Manor occurred in 1994 and 1995 when Continuum was operating the facility. Both Continuum, when it owned and operated Avery Manor, and CM/Needham, when it leased and operated the facility, were “providers” of services pursuant to provider agreements with the Commonwealth in connection with Medicaid payments of the kind in issue here.
When an overpayment of Medicaid reimbursements has occurred, the Division’s regulations authorize it to “hold back or recoup up to 100% of any and all payments to the provider, without further notice or demand, until such time as the full amount of any monies owed [on account of overpayments] is paid in full.” (Emphasis added.) 130 C.M.R. 450.260(E).
Here, as noted, the overpayments were made to Continuum, a previous operator to CM/Needham. However, G.L.c. 118E, Sec. 36(5) mandates that “(p]articipation in the medical assistance programs established under this chapter shall be limited to providers of services . . . who agree to be responsible for all overpayments owed to the division, including, in the case of transfer of ownership, the overpayments of any and all previous owners." (Emphasis added.) In each of CM/Needham’s provider contracts — the Medical Assistance Program Provider Agreement executed in 1997 and the Nursing Facility Provider Contract dated July 1, 2000 — CM/Needham, as the provider, agreed to comply with, and be subject to, federal and state statutes and regulations, and other applicable laws, governing participation in medical assistance programs like those under G.L.c. 118E. Consequently, CM/Needham is responsible for the particular over-payments in issue here.
*470 Paragraph 6 of CM/Needham’s July 1, 2000, Nursing Facility Provider Contract reads as follows:
The Provider must repay to the Division any amounts resulting from any overpayment, administrative fine, or otherwise, in accordance with the Division’s regulations and all other applicable laws. At its option, the Division may recoup such amounts owed to the Division from amounts owed the Provider for services rendered.
(Emphasis added.)
DISCUSSION
Summaiy judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Here, of course, both parties seek summaiy judgment, and they both agree that there are no material facts in dispute.
CareMatrix does not contest its responsibility for the overpayments made to Continuum, nor the Division’s right to “hold back” subsequent payments as a means of obtaining repayment. Rather, CareM-atrix argues that the Division’s ability to exercise its contractual rights was stayed by commencement of its bankruptcy proceedings. This, of course, brings the Court to the issue of whether what the Division did was a setoff or a recoupment.
The Division cites to In re Botelho, 195 B.R. 558, 563 (Bankr.D.Mass. 1996), quoting In re Mohawk Industries, Inc., 82 B.R. 174, 175 (Bankr.D.Mass. 1987), for the proposition that for a creditor to exercise a valid recoupment right, it must demonstrate that it is “crediting . . . reciprocal rights against each other where those rights arose under the same transaction, iypically the same contract.” Unlike setoff, recoupment is permitted even where the countervailing obligations span the bankruptcy petition date. See In re Abbey Financial Corp., 193 B.R. 89, 95 (Bankr.D.Mass. 1996). This is because a recoupment is not an independent claim against the bankrupt estate, but rather a defense that may be asserted against the estate’s post-petition right to payment arising out of the same transaction. Botelho, supra, 195 B.R. at 563. See also In re Women’s Technical Institute, Inc., 200 B.R. 77, 81 (Bankr.D.Mass. 1996).
CareMatrix leans heavily on In re University Medical Center, 973 F.2d 1065, 1081-82 (3d Cir. 1992), and In re Sun Healthcare Group, 245 B.R. 779, 785 (Bankr.D.Del. 2000), two cases that find the situations presented to be a setoff, not a recoupment. To these two courts, a determining factor in these cases was that recoupment was said to be effective only for transactions within the same calendar year under Medicaid. See id. at 786.
This Court reads the Third Circuit’s analysis in University Medical Center as presenting a different situation from that faced here. In University Medical Center, the entity had not assumed its provider contract at the time of filing for bankruptcy. Thus, the provider agreement was an executory contract which had to be properly assumed before it became binding. Even the Third Circuit agreed that if the agreement had been assumed, “there is no question that HHS could recover pre-petition overpayments without violating the automatic stay.” University Medical Center, supra, 973 F.2d at 1075.
Here, CareMatrix’s provider agreement was not ex-ecutory at the time it petitioned for bankruptcy protection. Thus, it would seem, even under University Medical Center the Division could recover pre-petition overpayments without violating the automatic stay.
The Sun Healthcare case adopts and follows the Third Circuit’s University Medical Center decision, as it must since the Sun Healthcare court — the District of Delaware Bankruptcy Court — is within the Third Circuit. Sun Healthcare adds little to the analysis for purposes of this case. Further, Sun Healthcare, at p. 786, cites to authority from several other courts that hold contrary to the Third Circuit in University Medical Center. E.g., United States v. Consumer Health Services of America, Inc., 108 F.3d 390 (D.C.Cir. 1997); In re TLC Hospitals, Inc., 225 B.R. 709 (N.D.Cal. 1998); Mercy Hospital of Watertown v. New York State Dep’t of Social Services, 171 B.R. 490 (N.D.N.Y. 1994); In re Tri County Home Health Services, Inc., 230 B.R. 106 (Bankr.W.D.Tenn. 1999); In re CDM Management Services, Inc., 226 B.R. 195 (Bankr.S.D.Ind. 1997); In re AHN Homecare, LLC, 222 B.R. 804 (Bankr.ND.Tex. 1998); In re Southern Institute for Treatment and Evaluation, Inc., 217 B.R 962 (Bankr.S.D.Fla. 1998).
This Court, of course, is not bound by any of the Federal Circuit Courts or other lower Federal Courts. But it does readily take guidance from them and considers their reasoning seriously. In doing so here, this Court is more convinced by the approaches of the D.C. Circuit in United States v. Consumer Health Services of America, Inc., 108 F.3d 390 (D.C.Cir. 1997); the Ninth Circuit in Sims v. United States Dep’t. of Health and Human Services, 224 F.3d 1008 (9th Cir. 2000); and the Massachusetts Bankruptcy Court in In re Holyoke Nursing Home, Inc., 273 B.R. 305 (Bankr.D.Mass. 2002).
To this Court, the “continuous system of estimated payments and subsequent adjustments” constitutes “(t]he same transaction for purposes of recoupment.” Sims, supra, 224 F.3d at 1012.
In drawing this conclusion, the Court observes the language of Para. 30 of the July 1, 2000, Nursing Facility Provider Contract between the Division and CM/Needham. It reads:
*471 The parties agree that this Contract, and all previous and subsequent Provider Contracts or other provider agreements entered into by the Provider and the Division, constitute a single contract for the purposes of payment of amounts owed to the Division by the Provider and recoupment by the Division of amounts owed by the Provider.
(Emphasis added.)
Also, as in Consumer Health Services, supra, 108F.3d at 396, the analysis here is driven in a significant way by the explicit statutory directives that the Massachusetts Medicaid rate methodology is prospective in nature and does not involve the setting of any “interim rate.” See G.L.c. 118G, Sec. 7, and 114.2 C.M.R. 5.00, et seq. Thus, a nursing facility’s Medicaid rates are set prospectively, based upon cost reports that the facility filed in the previously designated “base year.” G.L.c. 118G, Sec. 7. Those base-year costs, in turn, are used to set prospective rates for as many as four future years. Id. If a subsequent audit determines that a facility’s claimed costs were inflated, unsubstantiated or otherwise not allowable, then DHCFP recertifies new rates for the affected years, and the Division becomes entitled to recoup its overpayments from future payments to the facility. 130 C.M.R. 450.260(E). The overpayments, therefore, bear a close “logical relationship” to the course of dealing between the parties. It appears that because of the prospective nature of the Massachusetts rate-setting mechanism, overpayments cannot be captured in any other way. This would probably satisfy even the Third Circuit’s requirement that it be “inequitable for the debtor to enjoy the benefits of th[e] transaction without also meeting its obligations.” University Medical Center, supra, 973 F.2d at 1081.
Additionally, the Massachusetts Medicaid statute contains express language conditioning a provider’s participation in the program upon the provider’s agreement “to be responsible for all overpayments owed to the Division.” G.L.c. 118E, Sec. 36(5). Again there appears the “logical relationship” regarding the responsibility for overpayments called for in Sims.
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment (Paper 11) is ALLOWED and the plaintiffs motion for summary judgment (Paper 12) is DENIED. Accordingly, the plaintiffs verified complaint must be DISMISSED, with each party to bear its own costs.